Plaintiff-appellants, Brenda Klever and her parents, John and Virginia Klever, challenge a trial court order journalizing a structured settlement which the court found was reached by the parties out of the court's presence, and ordering the amount and mode of payment of appellants' attorney fees. We affirm.
 Facts
Brenda Klever suffered severe injuries as a result of an automobile accident on May 30, 1980, and was rendered a *Page 2 
quadriplegic. Brenda and her parents, John and Virginia Klever, retained attorneys George Pappas and Richard T. Cunningham to represent them in their claims against the city of Stow (the "city") for damages arising from the accident. Pappas and Cunningham brought suit against the city and eventually obtained a jury verdict awarding $5,087,625.34 to Brenda and her parents. The city appealed the judgment based on the verdict. This appellate court reversed and remanded the cause for a new trial. Following the Ohio Supreme Court's refusal to hear a further appeal, the case was set for a new trial to commence on November 30, 1982.
Settlement negotiations between the attorneys representing the parties began in July 1982. Brenda and her parents testified that Pappas and Cunningham informed them of various settlement offers made during the course of the negotiations. The record indicates that Pappas and Cunningham discussed a structured settlement offer with John and Virginia Klever on October 14, 1982. Pappas testified that during the October 14 conversation, John Klever said that the offer to settle Brenda's claim was fair and that he advised acceptance. Mr. Klever testified that he had never been in favor of Brenda's acceptance and that he and Mrs. Klever preferred a retrial. However, both parents testified that they said that Brenda should make the final decision. The record further indicates that the parents agreed to abandon their claim for medical expenses, said claim having been subrogated to Mr. Klever's insurer, in the hope that Brenda would receive a larger, unencumbered settlement amount.
Later that same evening, after discussing the matter with Mr. and Mrs. Klever, Pappas and Cunningham contacted the city's attorney, William Michaels, with further settlement suggestions. Sometime during the morning hours of October 15, 1982, Michaels telephoned Cunningham with a final offer. During this telephone conversation, Michaels indicated that this offer was contingent on the current prices for annuities which were subject to rapid change. Thus, the offer required prompt acceptance.
Pappas and Cunningham met with Brenda Klever later that same day (October 15) and informed her of the salient terms of the city's offer. The parties agree that Brenda understood the salient terms of the offered settlement. According to Pappas and Cunningham, Brenda instructed them to accept the offer on her behalf because she did not want to endure a second trial. Brenda denies this version, claiming that she told her attorneys that she wanted time to think about the offer before accepting or refusing.
Immediately following the conversation with Brenda, Cunningham telephoned Michaels to inform him that Brenda had accepted the offer and that the case was settled. After returning home, Pappas telephoned the trial judge to inform him that the case had been settled. Michaels informed his client of the acceptance, prepared a written memorandum of the agreement, purchased the annuities to fund future payments, and obtained a check for the initial lump sum payment. Cunningham approved the written memorandum of the agreement. News of the fact of settlement was obtained by the media, and an article concerning the settlement appeared in a local newspaper.
Apparently, John Klever learned of the settlement from the newspaper article and telephoned Brenda for more information. Brenda testified that she was surprised by the newspaper story and immediately telephoned Pappas to protest that the case had been settled without her consent. When informed that she could not withdraw her acceptance after the agreement had been reached, Brenda terminated her relationship with Cunningham and Pappas and retained her present counsel. Brenda and her parents refused to sign the written agreement and refused to accept any settlement payments. *Page 3 
Upon learning of this state of affairs, the trial court ordered all the parties and the attorneys involved to appear at a hearing to determine the validity of the settlement agreement. After considering the testimony of the Klevers, Pappas, Cunningham, and Michaels, the court found that John, Virginia and Brenda Klever had expressly authorized their attorneys, Pappas and Cunningham, to accept the structured settlement offer and that Pappas and Cunningham had acted within the scope of this authority by accepting the offer, thereby creating a binding settlement agreement. The written memorandum of the agreement was journalized by the court. The order also delineated the amount and mode of payment of fees to Cunningham and Pappas in accordance with an agreement the court found was reached between the attorneys and their client.
 Law and Discussion on Court's Authority
The threshold issue in this case is whether the lower court had the authority to conduct the hearing and to decide whether a settlement agreement had, in fact, been reached. Appellants raise this issue in their reply brief wherein they contend that they had a right to a jury trial on the settlement issue. At the outset we note that this issue not only was not raised in the trial court, as discussed below, but it also was not raised as error and argued in appellants' initial brief as required by App. R. 12. Rather, appellants injected this contention in their reply brief which, by definition, is limited to arguments rebutting points raised in the appellee's answer brief. App. R. 16(C). In short, appellants have failed to raise this issue in the proper vehicle and at the proper point in the appellate process. However, because appellee has had an opportunity to answer this contention and because this issue was orally argued to this court, we proceed to a determination on its merits.
In Morform Tool Corp. v. Keco Industries, Inc. (1971), 30 Ohio App.2d 207
[59 O.O.2d 320], plaintiff filed a complaint seeking to recover monies allegedly owed by defendant on an account. Defendant denied the alleged debt, and the case proceeded to trial. During a recess, counsel for the parties agreed to a settlement. Subsequently, defendant refused to perform its obligations under the agreement contending in response to plaintiff's motion to enforce the settlement that plaintiff had failed to deliver goods which conformed to the agreed upon specifications. Defendant made a motion requesting the court to continue the trial. The lower court overruled defendant's motion and entered judgment in favor of plaintiff pursuant to the terms of the alleged compromise.
On appeal, the court stated:
"The trial court had full jurisdiction to do one of two things. It could have gone forward with the case to determine liability upon the account. Defendant might have sought to amend its answer to plead breach of warranty but there is, from the record before us, nothing from which it can be concluded that the original action was not in progress. The trial court, just as well, could have opted to proceed upon the motion to enforce the settlement agreement.
"When the latter course was chosen, however, the court was under a duty to resolve the issue of fact raised by defendant's response to the motion. Because the settlement agreement was conditioned, the court was obliged to determine whether the conditions had been met before granting a judgment upon the terms of the agreement. The court could not act summarily. It had the duty and authority to adjudicate the issues presented in its enforcement." Id. at 210.
In Noroski v. Fallet (1982), 2 Ohio St.3d 77, plaintiff brought suit for damages resulting from an automobile accident. Defendant raised the affirmative defense of full and complete settlement of the claim. The trial court bifurcated the *Page 4 
issues, conducted a hearing on the issue of settlement without the benefit of a jury, held that plaintiff had released all claims arising from the accident, and granted judgment to defendant on the complaint. The Supreme Court reversed. The high court did not dispute the trial court's authority to decide the fact of release but rather held that, based on the evidence before it, the trial court had made an erroneous factual determination.
Admittedly, we are aware of Ohio cases which permit the settlement issue to reach the jury. See McBennett v. Piskur
(1965), 3 Ohio St.2d 8 [32 O.O.2d 5]; Grafton Lumber Coal Co.
v. Wadsworth Brick Tile Co. (1931), 41 Ohio App. 140; andIndianapolis v. Domhoff Joyce Co. (1941), 69 Ohio App. 109
[23 O.O. 547], affirmed (1942), 140 Ohio St. 64. However, we note that, in those cases, the settlement had been raised as an affirmative defense to plaintiff's cause of action. Furthermore, it appears that one of the parties had made a timely demand for a jury trial of all the contested issues.
In the instant case, settlement was reached shortly before retrial. It was not raised as an affirmative defense in the city's answer to the Klevers' complaint requesting a jury trial of the negligence issue. Rather, the matter came before the court on its own motion before a second jury had been empaneled and retrial had begun. We find no error in so proceeding. SeeMcKenzie v. Boorhem (W.D. Ark. 1954), 117 F. Supp. 433;Cunningham v. Iowa-Illinois Gas Electric Co. (1952), 243 Iowa 1377, 55 N.W.2d 552; and Ingalls Iron Works Co. v. Ingalls (N.D. Ala. 1959), 177 F. Supp. 151. Further, appellants did not request a jury trial on the settlement issue. Instead, they appeared at the hearing with new counsel and tried the settlement issue to the bench. Thus, appellants' failure to make a jury demand, or in any way object to the proceeding, coupled with their conduct clearly acquiescing in a bench trial, waived their right, if any, to a jury determination of the settlement issue.
 Assignments of Error
"I. The trial court erred in ordering settlement herein since appellants' former attorneys did not have the authority to settle appellants' claim.
"II. The trial court erred in imposing settlement since there was no meeting of the minds and no agreement by appellants to settle their claims."
Absent specific authorization, an attorney has no implied or apparent authority, merely by virtue of a general retainer, to compromise and settle his client's claims. Morr v. Crouch (1969),19 Ohio St.2d 24 [48 O.O.2d 43], paragraph two of the syllabus. Nor can a court compel settlement or by its imprimatur validate a settlement which is otherwise unenforceable. Id. at 27. See, also, Noroski v. Fallet, supra. However, when the parties agree to a settlement offer, this agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement.Spercel v. Sterling Industries (1972), 31 Ohio St.2d 36
[60 O.O.2d 20]; and Morform Tool Corp. v. Keco Industries, Inc.,supra. See, also, Teitelbaum Holdings, Ltd. v. Gold (1979),48 N.Y. 2d 51, 421 N.Y. Supp. 2d 556, 396 N.E.2d 1029; CumminsDiesel Michigan, Inc. v. The Falcon (C.A. 7, 1962),305 F.2d 721; McKenzie v. Boorhem, supra; and Cunningham v. Iowa-IllinoisGas Electric Co., supra.
Pappas and Cunningham testified that Brenda expressly authorized them to accept the city's final settlement offer. Brenda denies instructing them to settle and contends she desired to proceed to a new trial. If Brenda did, indeed, authorize her attorneys to accept the offer, the agreement is a binding contract clearly enforceable by the trial court. Thus, the instant case is distinguished from Morr v. Crouch, supra, wherein the attorney for one party lacked the authority to enter into the settlement agreement on his client's behalf and from Noroski v.Fallet, supra, wherein the court held that the *Page 5 
parties had not agreed to the settlement terms.
The structured settlement at issue here provides for various sums of money to be paid to either Brenda Klever or her estate in monthly installments and periodic lump sum payments over a period of twenty years. Should Brenda be alive after the final lump sum payment is made twenty years hence, she will continue to receive a fixed sum each month for the remainder of her life. The funding arrangements, based on annuities purchased by the city for Brenda, are somewhat complex.
Brenda argues that she could not have authorized acceptance because she was not informed of all the terms of the offer. However, the record indicates that she understood the salient terms of the offer, namely that, in exchange for fixed amounts of money to be paid her at specific times, she agreed to release the city from any liability stemming from the May 1980 accident. While it is true that Cunningham approved the terms of the written memorandum without consulting Brenda as to each clause, we believe that when she instructed him to settle her case, she impliedly authorized him to agree to the ministerial details necessary to effect the salient provisions of the agreement.
Since the record contains competent, credible evidence to support the trial court's finding, we will not reverse. C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279
[8 O.O.3d 261]. See, also, Internatl. Telemeter Corp. v.Teleprompter Corp. (C.A. 2, 1979), 592 F.2d 49; Butler v.Merrill, Lynch, Pierce, Fenner Smith, Inc. (C.A. 9, 1975),528 F.2d 1390; and Cummins Diesel Michigan, Inc. v. The Falcon,supra.
 Assignment of Error III
"The trial court's imposition of settlement constitutes plain error since the conduct of former counsel constitutes an elaborate pattern of ethical violations and breach of fiduciary responsibilities owed by former counsel to their former clients."
Appellants failed to raise this issue before the trial court. They now contend that, in light of alleged unethical conduct, confirmation of the settlement is plain error. We find nothing in the record to support these allegations.
 Assignment of Error IV
"The trial court erred in imposing settlement which was based on a purported agreement which failed to comply with the Ohio Statute of Frauds."
The Statute of Frauds (R.C. 1335.05) is an affirmative defense. By failing either to plead the defense or to object to the admission of the contract terms at the hearing below, appellants have waived the defense. Thus, the agreement can be enforced as though it satisfied the statute. This issue cannot now be raised for our review.
 Assignments of Error V and VI
"V. The trial court erred in imposing settlement which included attorneys' fees which were clearly excessive and beyond any agreement regarding attorneys' fees.
"VI. The trial court compounded its error in imposing settlement by permitting attorneys' fees in excess of the purported one-third contingency agreement."
Regardless of their original fee agreement, Brenda Klever testified that she subsequently agreed to pay Pappas and Cunningham a specific amount of money from the first lump sum settlement payment should she decide to accept the city's offer. The trial court found that she did indeed accept the offer. We find no error in incorporating this agreement into the trial court's journal entry of settlement.
We overrule all the assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
BAIRD and GEORGE, JJ., concur. *Page 6