841 F.2d 151
 28 Wage & Hour Cas. (BN 893, 108 Lab.Cas. P 35,037
 William E. BROCK, Plaintiff-Appellant, Cross-Appellee,
v.
The SCHEUNER CORPORATION; Tropical Freeze, Inc.; Venture
Corporation; Joseph M. Scheuner; Fannie
Scheuner, and Harriet Skupin,
Defendants-Appellees, Cross-Appellants.
 Nos. 86-6027, 86-6028.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 7, 1987.
Decided March 8, 1988.
 
 Robert C. Haynes, U.S. Dept. of Labor, Nashville, Tenn., Linda Jan S. Pack, Washington, D.C., William J. Stone, argued, for plaintiff-appellant, cross-appellee.
 Kathryn Carlyle, argued, Shields, Carlyle and Velander, Memphis, Tenn., for defendants-appellees, cross-appellants.
 Before ENGEL, KRUPANSKY and NELSON, Circuit Judges.
 KRUPANSKY, Circuit Judge.
 
 
 1
 Plaintiff-appellant William E. Brock, Secretary of the United States Department of Labor (Secretary) appealed from, and the defendants-appellees, three related corporations and their principal owners and officers (defendants),[1] cross-appealed from the district court's order enforcing a settlement agreement concluded by the parties in this action commenced by the Secretary to enforce the wage and hour provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 201 et seq. The record disclosed the following facts.
 
 
 2
 On July 8, 1981, the Secretary commenced this action in the United States District Court for the Western District of Tennessee pursuant to the district court's jurisdiction to restrain violations of the FLSA under 29 U.S.C. Sec. 217. The action was initiated because a 1980 investigation conducted by the Wage and Hour Division of the United States Department of Labor disclosed that the defendants' employees had been underpaid as a result of several unlawful practices including inadequate overtime payments, shorted hours, improper deductions for employer-provided meals, and improper deductions for tips. In his complaint, the Secretary sought injunctive relief and back wages for approximately 1200 employees.
 
 
 3
 After the defendants had answered by denying the allegations contained in the complaint, the parties began settlement negotiations. In January, 1983, the Secretary indicated his willingness to settle the case for one-half of the approximately $350,000 which he calculated had been underpaid to the defendants' employees. On February 10, 1983, counsel for the defendants telephoned counsel for the Secretary to discuss a possible settlement. During that conversation, counsel for the parties agreed that the matter should be settled by entry of a consent judgment which would enjoin the defendants from withholding back wages due their employees and from further violations of the FLSA. Counsel also agreed that the defendants would compute the amount of back wages due each employee and would pay the amounts in five equal installments, the first installment to be payable contemporaneously with the entry of judgment and each installment to become due quarterly thereafter. It was further agreed that interest was to accrue at a rate of 12% per annum on all sums remaining unpaid six months after entry of judgment. Defendants offered to settle the amount of back wages for $150,000, but counsel for the Secretary rejected that offer as insufficient. Counsel for the parties attended a settlement conference on February 17, 1983 but were again unable to agree on the amount of back wages to be paid to the defendants' employees.
 
 
 4
 On February 18, 1983, counsel for the parties exchanged several telephone calls during which they agreed to settle for one-half of the total amount due defendants' employees as calculated by the Secretary, or $162,714.32. The parties further agreed that all sums remaining unpaid after three years, i.e., the amount due former employees who could not be located, were to revert to the United States Treasury. Counsel for the Secretary accepted the responsibility of reducing the agreement to writing.
 
 
 5
 On March 4, 1983, the Secretary mailed a proposed draft of the consent judgment to counsel for the defendants. In this draft agreement, the Secretary incorporated several provisions which had not been agreed upon by the parties. Importantly, the Secretary included a provision requiring all payments to be made by certified or cashier's check as distinguished from a regular draft drawn upon the defendant's bank. This provision would have deprived the defendants of the "float" on their money, i.e., if the checks were simply drawn on the defendants' bank accounts, the defendants would have had the opportunity to collect interest on their funds until the employees-payees had negotiated the checks and the funds had been paid by the defendants' bank.
 
 
 6
 The defendants objected to this and several other provisions incorporated into the Secretary's draft of the agreement and refused to sign the document. Defendants also requested a recalculation of the sum due under the agreement. On May 18, 1983, defendants dispatched their own draft of the agreement to the Secretary, which draft, inter alia, omitted the requirement that payments be made by certified or cashier's checks. The defendants' draft was unacceptable to the Secretary.
 
 
 7
 Unable to resolve the dispute, the Secretary moved the district court to enforce the settlement agreement on June 22, 1983. The defendants responded by asserting that no agreement had been finalized. The district court referred the motion to a magistrate who conducted a hearing on the matter on November 14 and 15, 1983. The magistrate issued his report and recommendation on May 8, 1984.
 
 
 8
 In his report, the magistrate concluded that the parties had indeed concluded an agreement settling the litigation on February 18, 1983. In particular, the magistrate decided that the parties had agreed (1) that the defendants would be enjoined from future violations of the FLSA; (2) that the defendants would pay $162,714.32 in back wages to their employees and would calculate the amount due to each employee; (3) that payment was to be made in five installments, the first due upon entry of judgment and each installment due quarterly thereafter; (4) that interest would accrue at a rate of 12% per annum on all sums remaining unpaid six months after entry of judgment; and (5) that all sums remaining unpaid after three years were to revert to the United States Treasury. The magistrate expressly noted that "[t]he use of certified or cashier's checks was not specifically discussed between the parties." Based upon these findings, the magistrate recommended that the settlement agreement be enforced as drafted by the Secretary, that the district court enter the judgment nunc pro tunc effective May 18, 1983 so that interest would accrue six months after that date,[2] and that attorneys fees incurred in the enforcement proceedings be awarded to the Secretary.
 
 
 9
 Defendants timely filed objections to the magistrate's report and recommendation. The district court considered the objections de novo, and on July 15, 1985, the court concluded that the parties had indeed reached an agreement incorporating the terms as specified by the magistrate. The district court rejected the magistrate's recommendation to enforce the agreement as embodied in the Secretary's draft, and instead entered a judgment incorporating only those terms expressly agreed upon by the parties. The court, however, ordered that payment be made directly to the Secretary for disbursement to defendants' employees. The court rejected the magistrate's recommendation that the judgment be entered nunc pro tunc effective May 18, 1983, and adopted the recommendation that the Secretary be awarded attorneys fees incurred in the enforcement proceeding.
 
 
 10
 Following the district court's denial of motions for reconsideration filed by both parties and its subsequent determination of the amount of attorneys fees to which the Secretary was entitled, the Secretary timely appealed the district court's refusal to enter its judgment nunc pro tunc effective May 18, 1983. The defendants cross-appealed challenging the district court's determination that a settlement agreement had been reached, its order that payment be made to the Secretary for disbursement to the employees, and its award of attorneys fees to the Secretary.
 
 
 11
 "It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.) (citations omitted), cert. denied, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). See also Kukla v. National Distillers Prods. Co., 483 F.2d 619, 621 (6th Cir.1973). A federal court possesses this power "even if that agreement has not been reduced to writing." Bowater N. Am. Corp. v. Murray Mach., 773 F.2d 71, 77 (6th Cir.1985) (citing Odomes v. Nucare, Inc., 653 F.2d 246, 252 (6th Cir.1981)). Before enforcing settlement, the district court must conclude that agreement has been reached on all material terms. Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir.1983). The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement. In re Air Crash Disaster at John F. Kennedy Int'l Airport, 687 F.2d 626, 629 (2d Cir.1982).
 
 
 12
 In the case at bar, both the magistrate and the district court concluded that the parties had concluded an agreement on all material issues settling this litigation. That finding is not clearly erroneous. See Fed.R.Civ.P. 52(a) (district court's findings of fact shall not be set aside unless clearly erroneous). The record unequivocally disclosed that the parties, after extensive bargaining, reached an accord on February 18, 1983 when the defendants agreed to pay their employees a total of $162,714.32 in back wages. This was the final material term necessary to complete the agreement as the parties had earlier stipulated that the defendants would be enjoined from future violations of the FLSA, that the defendants would calculate the amount due to each employee, that payment would be made in five installments, the first due upon entry of judgment and each installment due quarterly thereafter, that interest would accrue at a rate of 12% per annum on all sums remaining unpaid six months after entry of judgment, and that all sums remaining unpaid after three years would revert to the United States Treasury. The district court's findings that the Secretary and the defendants had reached an agreement and that the agreement contained these terms are not clearly erroneous.
 
 
 13
 Defendants contend, however, that the district court erred by requiring that payment be made directly to the Secretary for disbursement to the affected employees.[3] The magistrate noted, and the parties did not dispute that "[t]he use of certified or cashier's checks was not specifically discussed between the parties." The agreement by the parties did not, therefore, include a provision requiring payment by certified or cashier's checks. Consequently, the district court properly concluded that it would be inappropriate to include such a provision in its judgment enforcing the settlement agreement.
 
 
 14
 The court, however, entered judgment requiring the defendants to make payment directly to the Secretary. The court erred by including this provision in its judgment order. The written draft submitted to the defendants by the Secretary on March 4, 1983 provided that payment was to be made by "separate ... checks payable to each individual employee." The draft submitted to the Secretary by the defendants on May 18, 1983 similarly provided that payment was to be made by "separate checks payable to each individual employee." The parties unquestionably agreed that the defendants would pay back wages to their employees by writing each employee a separate check and delivering those checks to the Secretary for distribution. Accordingly, the district court erred by altering the terms agreed upon by the parties and in ordering that payment be made directly to the Secretary.
 
 
 15
 Because the defendants legitimately protested the Secretary's inclusion of the provision requiring payment by certified or cashier's checks into the agreement, the district court correctly refused to enter judgment nunc pro tunc effective May 18, 1983. For this same reason, however, the district court erred in awarding attorneys fees incurred in the enforcement proceedings to the Secretary. See generally Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).
 
 
 16
 For the foregoing reasons, the judgment of the district court is VACATED and this case is REMANDED to the district court for entry of judgment consistent with this opinion.
 
 
 
 [1]
 The corporate defendants, The Scheuner Corporation, Tropical Freeze, Inc., and the Venture Corporation, were engaged in the restaurant and food service business at several locations in the Memphis, Tennessee area. The corporations were "family-owned" primarily by the individual defendants herein, Joseph Scheuner, his mother Fannie Scheuner, and his sister Harriet Skupin. In addition, Joseph Scheuner and Harriet Skupin served as officers of the various corporations
 
 
 [2]
 The magistrate concluded that May 18, 1983 was the date that judgment would have been entered by the district court had the instant enforcement proceedings not been necessary
 
 
 [3]
 This would have the same effect as requiring the defendants to pay their employees by certified checks, i.e., it would have effectively deprived the defendants of the advantage of the float. Because the checks would have been made payable to the Secretary, and could have been immediately negotiated, the funds would have been withdrawn from the defendants' bank accounts, and the defendants would not have collected interest on the funds during the period that they remained unclaimed by former employees