In re RHOADS INDUSTRIES, INC.

Bankruptcy No. 92–30483.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Dec. 17, 1993.

David Coyle, Toledo, OH, for debtor.

John Luchansky, Jr., Lambertville, MI, for
Blake and Thora Wendt.

## OPINION AND ORDER GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court on Rhoads Industries, Inc.'s ("Rhoads") motion to enforce a purported settlement agreement between Rhoads, and Blake and Thora Wendt. Upon consideration of the evidence adduced at trial and the oral arguments of the parties, the Court finds that Rhoads' motion is well taken and should be granted.

### FACTS

Rhoads filed a petition under chapter 11 of title 11 on February 2, 1992.

Blake Wendt's ("Blake") claim against Rhoads arose from Blake's sale of the R.H. Dewey Company ("Dewey") to Rhoads. Blake's claim is collateralized by Dewey stock. Dewey is Rhoads' wholly owned subsidiary. Thora Wendt ("Thora") has a claim against Dewey. Although Dewey has not filed a petition in bankruptcy, Rhoads' plan of reorganization (the "Plan") requires that Plan payments be made from Dewey's operating income.

In addition to requiring that Blake and Thora release all claims against Rhoads and its related entities, the purported settlement agreement required Blake to surrender all of the Dewey stock in which he had a lien.

Blake retained Attorney Thomas Schank ("Schank") to pursue his claim against Rhoads in bankruptcy court. The parties differ as to whether Thora also retained Schank to pursue her claim against Dewey.

Schank testified that Blake and Thora were referred to him by attorney Gerald Mills ("Mills"), who had represented Blake and Thora in certain state court proceedings involving Rhoads and Dewey. Mills remitted a retainer to Schank for both Blake and Thora. See Debtor's Exhibit 1.

Schank testified that it was his understanding that he was representing both Blake and Thora. Schank testified that he met with Blake and Thora on March 10, 1992 and discussed their respective claims against Rhoads and Dewey. According to Schank, Blake and Thora indicated that they had claims against Rhoads and Dewey and that they wanted Schank to represent them in collecting these claims.

Schank and Kenneth P. Rhoads ("KPR"), President of Rhoads, testified that Thora's claims against Dewey were discussed at a settlement conference on May 21, 1992 between Blake, Thora, Rhoads, Schank, Lori Rhoads, KPR, and Raymond Beebe, attorney for Kenneth Rhoads in his personal bankruptcy. Schank and KPR testified that a proposal was made by Rhoads to settle the claims of both Blake and Thora at this meeting. KPR testified that Schank made statements on behalf of both Blake and Thora at this meeting.

Schank testified that he had a number of phone conversations with both Blake and Thora regarding settlement of their claims. Further, Schank stated that he spoke with Thora on a "couple of occasions" regarding a proposed settlement.

Schank testified that all of the proposals which were discussed involved settlement of the claims of both Blake and Thora.

Schank billed both Blake and Thora on November 11, 1992 for services rendered.

In a letter to Schank dated April 9, 1993, Blake requested that "you and your firm withdraw from our litigation". Despite this fact, Schank testified that he called Blake and told him that it would not be in Blake and Thora's best interest to "simply walk away" from the Rhoads bankruptcy. Schank testified that he felt obligated to further discuss Blake and Thora's prospects of recovery with them given the fact that Dewey owed a substantial tax debt and Blake's secured claim was subordinated to a substantial secured claim by Mid American National Bank and Trust.

Schank testified that he subsequently discussed the possibility of a lump sum settlement with Blake during a telephone conversation and that Blake indicated that this "made sense". Schank testified that his time records indicate that he spent 6 minutes conversing with Blake. According to

Schank, Blake told him that a settlement figure of $25,000.00 would be acceptable.

Schank testified that on May 18, 1993 Rhoads faxed him a copy of the provisions of a proposed settlement agreement which released all claims of Blake and Thora against Rhoads, Dewey, KPR, Lori Rhoads and other related entities in exchange for a $30,000 payment from Lori Rhoads on or before June 30, 1993 (the "Settlement Agreement"). *See* Debtor's Exhibit 10. The Settlement Agreement further required Blake to surrender all of the Dewey stock in which he had a lien.

Blake and Thora attended a May 20, 1993 conference in Schank's office to discuss a settlement with Rhoads (the "Settlement Conference"). Blake and Thora's testimony regarding the events which transpired at the Settlement Conference diverged greatly from Schank's testimony.

Thora testified that the Settlement Conference lasted less than 10 minutes, that no documents were provided regarding the Settlement Agreement and that no specific settlement figures were discussed. Thora testified that her claim was not discussed at the Settlement Conference.

Blake also testified that the Settlement Conference lasted less than 10 minutes and that no documents were provided regarding the Settlement Agreement.

Blake testified that there were "figures thrown around" but that such figures were inadequate. He stated that there was "considerable talk" but nothing which he felt rose to the level of a settlement agreement. Further, contrary to Thora's testimony, Blake testified that settlement amounts of between $30,000.00 and $40,000.00 were discussed.

In contrast to Thora's statement that her claim was not discussed, Blake testified that Thora's claim against Dewey may have been discussed during the "last portion of" the Settlement Conference.

Schank, on the other hand, testified that he spoke with Blake and Thora for 45 minutes. Schank testified that he reviewed the entire Settlement Agreement with Blake and Thora. Schank testified that the Settlement Agreement was "passed around the table". Schank testified that he further reviewed

"the options, the likelihood of Dewey Company ever being able to repay Mrs. Wendt or the stock of Dewey being worth anything" with Blake and Thora. Schank testified that he reviewed Dewey's financial statements, Rhoads' amended plan of reorganization and Rhoads' monthly reports with Blake and Thora. Schank also stated that he "went through those and explained my analysis to Mr. and Mrs. Wendt as to why I did not feel if they simply did nothing they would get any money out of Rhoads Industries". Schank testified that he was satisfied that Blake and Thora understood the Settlement Agreement when the Settlement Conference had concluded. Schank stated that Blake and Thora "reluctantly" assented to the Settlement Agreement. Schank also stated that he discussed the subject of when the funds from the Settlement Agreement would be available to Blake and Thora.

Schank's testimony and his letter to Blake and Thora withdrawing from his representation indicate that Schank notified Rhoads' attorney that the Settlement Agreement was acceptable to Blake and Thora after the Settlement Conference. *See* Debtor's Exhibit 8.

Schank testified that the parties had not agreed on the rights of the parties under a business property lease between Blake and Thora, as lessors, and Rhoads, as lessee. *See* Debtor's Exhibit 11. Although Schank testified that an agreement regarding the lease was desired by the parties so that they could avoid an ongoing business relationship, Schank's testimony indicated that an agreement regarding the lease represented a "detail" which needed to be finalized.

Thora testified that she asked Schank about her claim against Dewey during a subsequent phone conversation.

Schank filed a proof of claim for Thora on June 1, 1993. *See* Debtor's Exhibit 4. Schank described this as a "protective filing".

Schank testified that Blake and Thora informed him that they did not plan to proceed with the Settlement Agreement with Rhoads during a phone conversation in June of 1993.

On June 24, 1993, Schank informed Rhoads' attorney by letter that Blake and

Thora did not intend to comply with the Settlement Agreement. *See* Debtor's Exhibit 6.

On June 30, 1993, Rhoads informed Blake and Thora by letter that Rhoads was ready, willing and able to complete the Settlement Agreement. *See* Debtor's Exhibit 7.

## DISCUSSION

### ENFORCEMENT OF SETTLEMENT AGREEMENT

**Schank's Representation of Thora Wendt**

The Court finds that Schank was engaged to represent Thora and that he had express authority to settle her claim against Dewey.

■ In determining whether Schank was Thora's attorney, the Court will apply the Ohio law of agency. *See In re Paolino,* 85 B.R. 24 (Bankr.E.D.Pa.1988) (applying Pennsylvania law of agency); *c.f. Watson v. McCabe,* 527 F.2d 286, 288 (6th Cir.1975) ("The law to be applied by a federal court depends on the nature of the issue under consideration. . . . If the issue concerns a non-federal matter state substantive law applies").

■ It is axiomatic that an attorney is an agent of the client. *Morr v. Crouch,* 19 Ohio St.2d 24, 249 N.E.2d 780 (1969). Rhoads bears the burden of proof on the existence of this agency relationship. *Gardner Plumbing, Inc. v. Cottrill,* 44 Ohio St.2d 111, 113, 338 N.E.2d 757, 759 (1975).

■ "[T]he rule in Ohio and elsewhere is that an attorney who is without specific authorization has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action". *Morr v. Crouch,* 249 N.E.2d at 782; *accord Nelson v. Consumers Power Co.,* 198 Mich.App. 82, 497 N.W.2d 205 (1993); *c.f. Klever v. Stow,* 13 Ohio App.3d 1, 4, 468 N.E.2d 58, 62 (1983) (settlement enforced where attorney informed client of salient features of settlement and client gave attorney express authority to settle).

■ Schank gave credible testimony that he was engaged to represent Thora.

Schank also gave credible testimony as to the events which transpired at the Settlement Conference. Significantly, Schank testified that he reviewed the entire Settlement Agreement with Blake and Thora. Schank also stated that he gave Blake and Thora a detailed analysis of the options available to both of them. Schank testified that "the likelihood of Dewey Company ever being able to repay Mrs. Wendt" was specifically discussed at the Settlement Conference. Schank testified that both Blake and Thora "reluctantly" agreed to the Settlement Agreement.

Therefore, Schank's testimony supports a finding that Schank was retained to represent Thora and had express authority to settle her claim against Dewey.

In addition, the further documentary and testimonial evidence presented at trial buttresses the conclusion that Schank was retained to represent Thora and had express authority to settle her claim against Dewey.

The letter from Mills to Schank indicates that Mills viewed Schank as attorney for both Blake and Thora. *See* Debtor's Exhibit 1.

Schank gave credible testimony that he discussed Thora's claim with her and also with Rhoads in Thora's presence. This supports the conclusion that Thora viewed Schank as her attorney.

Schank testified that Thora discussed her claim against Dewey with Schank at the meeting on March 10, 1992.

Both Schank and KPR stated that Thora's claims were discussed at the May 21, 1992 meeting. KPR also testified that Schank spoke on Thora's behalf at this meeting. Furthermore, both Schank and KPR testified that Rhoads made a proposal to settle the claims of both Blake and Thora at this meeting.

Moreover, Schank testified that he spoke with Thora on a "couple of occasions" regarding a proposed settlement.

Schank also testified that all of the proposals involved settlement of the claims of both Blake and Thora.

The fact that Thora asked Schank about her claim in a telephone conversation subsequent to the Settlement Conference also provides evidence that Thora viewed Schank as her attorney.

The letter which Blake sent to Schank purporting to request Schank's withdrawal from his representation refers to "our litigation" and discussions between Blake and Thora as to the future costs of litigation. *See* Wendts' Exhibit A. This letter indicates that Blake also believed that Schank was representing both Blake and Thora.

Subsequent to the Settlement Conference, Schank represented Thora's interest in communicating with Rhoads regarding the lease between Blake and Thora, and Rhoads. Schank also filed a claim on Thora's behalf in June of 1993.

The evidence provided at trial has convinced the Court that Schank was engaged to represent Thora and had the authority to settle her claim against Dewey.

**Schank's Representation of Blake Wendt**

The Court further finds that Schank was engaged to represent Blake and that Schank had express authority to settle Blake's claim against Rhoads.

Although the letter which Blake sent to Schank on April 9, 1993 requested Schank to resign his representation, Blake continued to pursue his claim against Rhoads through Schank. Blake discussed a possible lump sum settlement of his claim against Rhoads with Schank on the telephone on April 29, 1993. Blake also attended the Settlement Conference at Schank's office and discussed a lump sum settlement of his claims against Rhoads with Schank. Schank testified that he thoroughly discussed the Settlement Agreement with Blake. In addition, Schank provided his analysis of Blake's claim against Rhoads. Lastly, Schank testified that Blake specifically manifested his assent to the Settlement Agreement. Therefore, the Court finds that Schank had the express authority to settle Blake's claim against Rhoads.

**The Settlement Agreement**

Lastly, the Court concludes that Schank did, in fact, enter into a binding settlement agreement with Rhoads and Dewey on behalf of Blake and Thora.

■ A federal court has the inherent power to enforce settlement agreements. *Brock v. Scheuner Corp.*, 841 F.2d 151 (6th Cir. 1988).

■ Since the alleged settlement agreement was purportedly made in Ohio, the Court will apply Ohio contract law. *Royal Bank and Trust Co. v. Pereira (In re Lady Madonna Industries, Inc.)*, 76 B.R. 281, 286 (S.D.N.Y.1987) (applying state contract law in deciding whether alleged settlement agreement was binding on the parties); *In re Paolino*, 85 B.R. at 24 (applying state contract law in deciding whether alleged settlement agreement was binding on the parties); *In re Unit, Inc.*, 45 B.R. 425 (Bankr.S.D.Ohio 1984) (applying state contract law in determining whether alleged settlement agreement was binding on the parties).

■ The Supreme Court of Ohio has observed that "an oral settlement agreement requires no more formality and not greater particularity than appears in the law for the formation of a binding contract". *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302, 1304 (1982) (citing *Spercel v. Sterling Indus.*, 31 Ohio St.2d 36, 285 N.E.2d 324 (1972) *cert. denied* 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973)); *c.f. Brock*, 841 F.2d at 154 (noting that a court may enforce settlement agreements which have not been reduced to writing). "The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." *Noroski*, 442 N.E.2d at 1304; *c.f. Toledo Trust Co. v. Roberts (In re Nicholson Industries, Inc.)*, 73 B.R. 266 (Bankr.N.D.Ohio 1987) (declining to enforce settlement agreement where there was no meeting of the minds between the parties).

■ "An agreement is enforceable if it encompasses the essential elements of the bargain.... Omission of less central subjects leaves those matters for later agreement or judicial resolution." *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586, 589 (1983) (citations omit-

ted); *c.f. Brock,* 841 F.2d at 154 (in determining whether to enforce a purported settlement agreement a court must decide whether "agreement has been reached on all material terms").

■ Rhoads must prove the alleged settlement agreement by clear and convincing evidence. *See Anschutz v. Radiology Assocs. of Mansfield, Inc.,* 827 F.Supp. 1338 (N.D.Ohio 1993) (applying clear and convincing standard in diversity action).

■ In weighing the testimony at trial, Schank's testimony as to what transpired at the Settlement Conference was credible. As the Court has previously noted, Schank reviewed the Settlement Agreement with both Blake and Thora. He reviewed Blake and Thora's options in light of Dewey's financial statements, Rhoads' amended plan of reorganization and Rhoads' monthly reports. After Schank reviewed the Settlement Agreement with Blake and Thora, they both assented to the Settlement Agreement.

The testimony provided by Blake and Thora as to what transpired at the Settlement Conference had little probative value because such testimony was either incredible or "clouded with uncertainty". *See Lakewood Mfg. Co. v. Commissioner,* 453 F.2d 451, 454 (6th Cir.1972) ("the trier of fact has always the duty to weigh the evidence presented and has the right to accept or reject such evidence") (citations omitted); *see also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 514 (9th Cir.1985) (citation omitted) (noting that a court can reject even uncontroverted testimony of a witness "because of its inherent unbelievability, because a witness's demeanor raises doubt as to his sincerity or because the testimony is clouded with uncertainty").

In addition, Schank's testimony has convinced the Court that resolving the lease issues represented no more than a "detail." Therefore, the Court finds that provisions concerning the lease, although desirable, were not material to an agreement to settle Blake and Thora's claims.

The material features of the agreement between the parties were contained in the Settlement Agreement faxed to Schank by Rhoads. Blake and Thora expressed their assent to be bound by the Settlement Agreement to Schank who had the authority to enter into a settlement agreement on their behalf. Schank communicated Blake and Thora's assent to the Settlement Agreement to Rhoads' attorney. Therefore, the Court concludes that Blake and Thora should be bound by the terms of the Settlement Agreement as contained in the fax transmittal of May 18, 1993 from Rhoads to Schank. *See* Debtor's Exhibit 10.

In light of the foregoing, it is therefore

ORDERED that Rhoads' motion to enforce settlement agreement be, and it hereby is, granted. It is further

ORDERED that upon payment of $30,-000.00 to Blake and Thora Wendt, the Wendts shall execute the settlement agreement as set forth in Debtor's Exhibit 10.