on this material term of the settlement. *See United Paperworkers Int'l Union v. Champion Int'l Corp.*, 908 F.2d 1252, 1258 (5th Cir. 1990) ("In determining whether there was a meeting of the minds, the parties' objective, rather than subjective, intent governs."); *see also Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997) ("The presence of an ambiguous material term may indicate that no meeting of the minds occurred when the document was signed."). Because the root source of the ambiguity was the district court's own inconsistent language, we believe that it was an abuse of discretion for the court to impose Thermoscan's version of the settlement upon TSI.

**C.  The question of whether the district court erred when it dismissed TSI's suit with prejudice is rendered moot**

   Because we are remanding this case for further proceedings, the issue of whether the district court erred when it dismissed TSI's claims with prejudice is rendered moot.

### III.  CONCLUSION

   For all of the reasons stated above, we **REVERSE** the judgment of the district court and **REMAND** the case for a ruling on Thermoscan's motion for summary judgment and, if necessary, for a trial on the merits.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0212P (6th Cir.)
File Name: 00a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THERMA-SCAN, INC.,
   *Plaintiff-Appellant,*

   *v.*                                             No. 99-1541

THERMOSCAN, INC.,
   *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-70385—Arthur J. Tarnow, District Judge.

Submitted: April 27, 2000

Decided and Filed: June 29, 2000

Before: NORRIS and GILMAN, Circuit Judges; HOOD,
District Judge.

---

**COUNSEL**

**ON BRIEF:** Mark A. Cantor, BROOKS & KUSHMAN, Southfield, Michigan, for Appellant. Marie V. Driscoll, Rose Auslander, FROSS, ZELNICK, LEHRMAN & ZISSU, New

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

York, New York, Dennis M. Barnes, BARRIS, SCOTT, DENN & DRIKER, Detroit, Michigan, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge.  Therma-Scan, Inc. (to be referred to as "TSI" solely for the sake of clarity), a Michigan corporation, sued Thermoscan, Inc., a Georgia corporation, alleging trademark infringement and unfair competition.  Thermoscan subsequently filed a motion for summary judgment.  During oral argument on Thermoscan's motion, the parties purported to reach a settlement with the assistance of the district court.  The district court attempted to summarize the key terms on the record, and then directed the parties to draft a written agreement.  Despite numerous discussions, TSI and Thermoscan failed to agree on specific language for one of the key provisions.  Thermoscan thereafter requested the district court to adopt the settlement agreement as drafted by its own counsel.  The district court granted the motion and dismissed TSI's action with prejudice.  TSI now challenges those rulings.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for a ruling on Thermoscan's motion for summary judgment and, if necessary, for a trial on the merits.

## I.  BACKGROUND

### A.  Factual background

TSI performs infrared thermal imaging examinations at its facility in Huntington Woods, Michigan.  From these examinations, it produces diagnostic reports that are used by physicians and patients.  On November 1, 1988, TSI properly registered with the United States Patent and Trademark Office its "THERMA-SCAN" trademark, which TSI had been using since 1972.

*size, bigger or smaller, but just visible . . . .*"  (Emphasis added.)  Both sides indicated in open court that they agreed with the district court's outline of the settlement terms, but their subsequent dispute makes clear that each heard only what it wanted to hear.  TSI honed in on the words "prominently displayed" and naturally expected them to be in the written agreement.  Thermoscan, on the other hand, fixated on the words "just visible" and equally expected them to be the controlling standard.

These reasonable differences in interpretation manifested themselves in heated debate during the drafting process, a situation that highlights the disagreement between the parties and the obvious materiality of the disputed term.  *See United States v. Orr Constr. Co.*, 560 F.2d 765, 770 (7th Cir. 1977) ("[T]he record shows that the parties consistently clashed over the meaning of [a clause in their tentative agreement] during the course of their negotiations following the exchange of proposals, indicating that they never had reached a true agreement.").

The basic problem is that, at least as it relates to size, the terms "prominently displayed" and "just visible" are inherently incompatible.  Yet the district court used both terms in successive sentences.  Although either party could have, and perhaps should have, pointed out this inconsistency to the district court, there is no basis to blame one side any more than the other for failing to do so.  *See Flower City Painting Contractors, Inc. v. Gumina Constr. Co.*, 591 F.2d 162, 165 (2d Cir. 1979) ("[W]e cannot say that either party acted so unreasonably as to justify construing the ambiguity in the contract against it.").

We recognize that a trade name can be "prominently displayed" by means other than size, such as by font, placement, color, or relief.  But Thermoscan objected to any language that included the term "prominently displayed," despite its explicit mention by the district court as a key provision of the proposed settlement.  The end result was simply no objective manifestation of a "meeting of the minds"

agreement in settlement of litigation pending before it . . . ." *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 282-83 (6th Cir. 1986). Moreover, "[a] federal court possesses this power 'even if that agreement has not been reduced to writing.'" *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (quoting *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 77 (6th Cir. 1985)). In *Kukla v. National Distillers Products Co.*, 483 F.2d 619 (6th Cir. 1973), however, this court cautioned as follows:

> The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation. . . . While summary enforcement of a settlement agreement may very well promote the above policy in cases where there exists no substantial dispute as to the entry into, or the terms of, the agreement, summary proceedings may result in inequities when . . . such a dispute does exist.

*Id.* at 621 (citations omitted). Thus, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Brock*, 841 F.2d at 154.

Here, the district court summarily concluded that "[t]he parties . . . entered into a stipulation and agreement in open Court . . . ." We believe this finding of fact was clearly erroneous. Notably absent from its order is any discussion of whether the parties agreed as to Thermoscan's secondary identifier obligations. If the district court had engaged in such an analysis, it would have recognized that the source of the disagreement was the district court's own language. The parties' collective conduct following the February 26, 1999 hearing confirms that there was ambiguity in the district court's recitation of the disputed term.

As previously noted, the district court set forth the understanding of the parties as follows: "[A]ll marketing in the future of the Thermoscan thermometer shall include the name 'Braun' *prominently displayed* either in the advertising or on the package. And *I'm not saying that it has to be equal*

Thermoscan manufactures hand-held products that determine body temperature by measuring the heat generated within the human ear. On September 24, 1991, Thermoscan registered with the United States Patent and Trademark Office its "THERMOSCAN" trademark, which Thermoscan had been using since 1990. In 1995, Thermoscan was purchased by The Gillette Company, which also owns Braun, Inc. Gillette, in an effort to take advantage of the Braun brand name, began printing "BRAUN" on Thermoscan products manufactured after 1996.

## B. Procedural history

On January 26, 1998, TSI filed suit against Thermoscan, asserting claims of trademark infringement and unfair competition in violation of 15 U.S.C. §§ 1114 and 1125, respectively. TSI also requested that the district court issue an order directing the Commissioner of Patents and Trademarks to cancel Thermoscan's 1991 trademark registration. Thermoscan filed a motion for summary judgment on October 2, 1998.

On February 26, 1999, the district court held a hearing on Thermoscan's motion. During the course of the proceeding, the district court discussed with the parties the effect that Gillette's practice of printing "BRAUN" on Thermoscan products had on TSI's claims. Counsel for TSI commented that the practice "would simply tend to lessen confusion . . . ." Toward the end of the hearing, the district court asked counsel for Thermoscan whether, if the district court were to rule in its favor, "there would be any problem" with an order requiring Thermoscan to place the Braun name on its products as a "secondary identifier." Thermoscan's counsel responded that Thermoscan "absolutely does plan moving forward to have the Braun mark on all of these products" and that "[t]here would be absolutely no objection to that." The district court then suggested that the parties might want to recess to discuss a possible settlement: "[I]f we can reach an accord where [Thermoscan] agree[s] to do everything to minimize . . . confusion and [TSI] is in agreement, that might

be the best way to resolve it. . . . [W]e'll take a . . . break at this point and see what you guys can work out."

Approximately thirty minutes later, the parties informed the district court that they had indeed reached a settlement. After discussing the matter off the record, the district court stated as follows:

[L]et me put on the record the outline of the understandings I have, which will hopefully give some guidance. . . .

The Court, having heard the arguments and trying to accommodate the parties, would indicate that an appropriate resolution of this case would include the following, which will be drafted and agreed to by the attorneys, the outline having been agreed to already in general terms.

One, that the lawsuit will be dismissed;

Two, that all marketing in the future of the Thermoscan thermometer shall include the name "Braun" *prominently displayed* either in the advertising or on the package. And *I'm not saying that it has to be equal size, bigger or smaller, but just visible;*

Three, that [Thermoscan] be allowed a sufficient time . . . to sell any product that they have in stock and inventory anywhere in their channels of distribution even if that product does not have the "Braun" on it;

Four, that the matter that is currently being held in abeyance at the Trademark Office be dismissed, withdrawn.

(Emphasis added.)

The district court then invited the parties to comment on its recitation of the agreement. When counsel for TSI asked whether the suit would be dismissed without prejudice, the

might be appropriate, the court cited several circuit cases—including *Brock*—and concluded as follows:

[S]ome of these circuits have adopted the abuse of discretion standard when reviewing a district court's decision to enforce a settlement agreement. This makes sense. To the extent the court's power to enforce a settlement agreement falls within the court's role as supervisor of litigation, then, this is precisely the type of determination that normally receives a deferential, abuse of discretion review. Therefore, we join with these other circuits and hold that the abuse of discretion standard is the proper guide for our review of a district court's decision to enforce a settlement agreement.

*Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995).

To the extent that the district court in the present case made a finding of fact that the parties had agreed to the settlement terms as set forth in the draft agreement, the clearly erroneous standard is applicable. Otherwise, we believe that the reasoning of *Wilson* is persuasive, and therefore will utilize the abuse of discretion standard in reviewing the district court's decision to grant the motion to enforce the settlement based on its preliminary factual finding.

**B.    The district court erred when it ordered TSI to sign the settlement agreement**

In this appeal, TSI contends that the district court's order should be set aside because "the terms of the agreement are in dispute" and because "there was no meeting of the minds on the principal issue . . . ." Thermoscan, on the other hand, asserts that TSI "committed to a settlement agreement on the record in open Court" and "later insisted on an additional term . . . ." For the reasons set forth below, we are of the opinion that the district court clearly erred in siding with Thermoscan on this factual question.

"This circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an

the size of the BRAUN mark or different comparable mark, as long as it is visible. . . .

In this appeal, TSI asserts that the district court erred by forcing it to agree to the provision set forth above, and that, even if its ruling was appropriate, the suit should have been dismissed without prejudice.

## II.  ANALYSIS

### A.  Standard of review

The parties dispute the proper standard of review.  Without citing any authority, TSI contends that the panel should review de novo the district court's decision to grant the motion to enforce the settlement.  Thermoscan, however, cites *Brock v. Scheuner Corp.*, 841 F.2d 151 (6th Cir. 1988), for the proposition that "a [d]istrict [c]ourt decision enforcing settlement may not be set aside unless it is clearly erroneous."

We are persuaded that some type of deferential standard of review is in order, but find that this court's case law does not clearly indicate the proper standard.  In *Brock*, this court concluded that the "finding" that the parties had reached agreement on all material issues by both the magistrate judge and the district court was "not clearly erroneous." *Id*. at 154.  Although this implies the use of the "clearly erroneous" standard to review such factual findings, the opinion does not explicitly discuss the appropriate level of review.  In fact, in two subsequent unpublished decisions, this court has declared that a district court's decision to enforce a settlement agreement is "reviewed only for an abuse of discretion." *Dillow v. Ashland, Inc.*, No. 97-6108, 1999 WL 685941, at *1 (6th Cir. Aug. 24, 1999); *Johnson v. Hanes Hosiery*, No. 94-6184, 1995 WL 329453, at *1 (6th Cir. June 1, 1995).  Neither *Dillow* nor *Johnson* cites *Brock*.

Recently, the Seventh Circuit addressed the issue of whether the standard should be de novo or deferential.  Without considering when or if the clearly erroneous standard

district court noted that "yes, it will be without prejudice." Thermoscan later agreed with that position:

> It's clear at this point that [TSI] has no objection to the current use and the current packaging.  And so it would seem that if the case were dismissed without prejudice at this point, that would be appropriate, particularly since we have every intention of continuing to do so.  And if we were to not do so at some point in the future, they could bring a lawsuit and test it on the merits as to whether there was actually a likelihood of confusion of that future use.

During a later exchange, however, the district court stated as follows: "I'm not sure I would dismiss it without prejudice. I would probably dismiss it *with* prejudice."  (Emphasis added.)  Then, after the attorneys discussed briefly whether the manner in which Thermoscan labeled its products since 1996 would be acceptable to TSI, the district court indicated to TSI's counsel that "when or if [Thermoscan] do[es] *not* use Braun or an equivalent substitute with the name, then you are free to come back and bring your lawsuit." (Emphasis added.) After further discussion regarding possible noncompliance on the part of Thermoscan, and TSI's right to reassert its claims should that occur, the district court directed the parties to draft a written settlement agreement: "I suggest good reading would be this transcript, and I would expect an order within two weeks."

From February 26, 1999 through March 21, 1999, the attorneys attempted to reduce their settlement agreement to writing.  An impasse arose, however, regarding the language to be used to describe Thermoscan's "secondary identification" obligations.  Specifically, the record indicates that TSI insisted that the settlement agreement specifically direct Thermoscan to "prominently display" the word "BRAUN" (or a comparable mark) as its secondary identifier in a manner consistent with Thermoscan's current labeling. Thermoscan, however, refused to incorporate any such language.

On March 22, 1999, Thermoscan filed a motion to enforce the settlement or, alternatively, for a ruling on its motion for summary judgment. A copy of its proposed draft, as well as photos of Thermoscan's current packaging, were attached to the motion as exhibits. In its filing, Thermoscan characterized TSI's objection as follows:

> [TSI]'s objection relates to paragraph 3 of the settlement agreement . . . , which describes [Thermoscan]'s present use and the contemplated future use of the THERMOSCAN mark. [TSI] now claims that paragraph 3 should be revised to state that the use of the THERMOSCAN mark which would be non-objectionable is where the BRAUN mark "is used on THERMOSCAN goods[,] . . . packaging[,] and marketing for such goods *in a manner comparable to* the current BRAUN THERMOSCAN packaging and product as shown in Exhibits B and C hereto, which is acceptable to . . . [TSI] . . . ."

(Emphasis in original.)

TSI filed a response on March 31, 1999, arguing that "[t]he proposed paragraph 3 of the settlement agreement . . . is carefully worded to deprive [TSI] of its rights to bring suit again irrespective of how [Thermoscan] use[s] the BRAUN or comparable mark on future products or packaging." It elaborated with the following explanation:

> [Thermoscan] has put in language that it can use *any* packaging or labeling irrespective of the prominence of the BRAUN or comparable mark, as long as it's "visible." [TSI] has requested language that the future use of BRAUN or a different comparable mark has comparable prominence to the packaging that is currently being approved by [TSI]. [Thermoscan] has refused to agree to this language and under [Thermoscan]'s language, [TSI] could have the BRAUN in small lettering that is barely "visible" and use a THERMOSCAN that is ten to twenty times the size of

the BRAUN or comparable mark. This was clearly not the agreement or intent of the parties.

> While both parties have presented their interpretation of what they believed the terms of the settlement entered into on the record were, it is clear that there was not a meeting of the minds between these parties as to the terms of the settlement.

(Emphasis in original.)

Thermoscan, in its April 7, 1999 reply, argued that "the restrictions [TSI] would impose are unduly vague and overly restrictive." It contended that "it would be difficult, if not impossible, to ensure that [Thermoscan]'s extensive nationwide advertising and promotion to customers, professionals and the trade, in all media from print media to internet to televison commercials, used the mark in the required graphics and sizes."

On April 20, 1999, the district court, after noting that "[t]he parties having entered into a stipulation and agreement in open Court," granted Thermoscan's motion to enforce the settlement and dismissed TSI's suit *with* prejudice. It ordered TSI and Thermoscan to sign an attached agreement. Paragraph 3 of that agreement provides as follows:

> [TSI] shall not object to the use of THERMOSCAN on and in connection with thermometers, related goods, accessories, and packaging therefor by the Gillette parties, and any one of them, and by any related companies and affiliates, provided that the BRAUN mark, or a different comparable mark, is used on THERMOSCAN goods and marketing materials and consumer packaging for such goods. [TSI] shall not object to the current BRAUN THERMOSCAN packaging and product as shown in Exhibits B and C hereto, which is acceptable to [TSI]. This Agreement does not limit the Gillette parties' use of packaging or product to the appearance of the packaging or product shown in those exhibits. There are no requirements as to