DECISION AND JOURNAL ENTRY
William Frantz appeals the decision of the Summit County Court of Common Pleas, compelling Frantz to comply with a settlement agreement. This court affirms.
 I.
Frantz, John Hall, J. Lorin Sickafoose, and Michael Baker formed a real estate partnership, Group Four Management Company ("Group Four") on or about June 30, 1981. Group Four owns and operates a commercial office building in Copley, Ohio. Frantz, Hall, and Sickafoose are also stockholders of a closely held corporation, Systems Data, Inc. ("SDI"). At the time relevant here, the assets of SDI consisted only of brokerage and bank accounts, with an approximate value of $350,000. Frantz is a majority stockholder in SDI, while Hall and Sickafoose are minority stockholders, along with several other individuals not parties to the instant case. Frantz was involved in financial transactions for both SDI and Group Four for a number of years.
Problems arose when Baker sold his partnership share in Group Four to Frantz, allegedly in violation of the partnership agreement. Hall and Sickafoose also believed that Frantz had misappropriated funds from both Group Four and SDI. On March 18, 1998, Hall and Sickafoose filed suit against Frantz, Baker, Group Four, SDI, and William Wittenauer, an accountant working for Frantz, Group Four and SDI.[1] The suit alleged that Wittenauer and Frantz conspired to fraudulently misappropriate funds of Group Four and SDI, that Wittenauer and Frantz both breached their fiduciary duty to plaintiffs, and that Baker's sale of his partnership interest to Frantz constituted a breach of the partnership agreement. The complaint requested an accounting for Group Four and SDI, and dissolution of both the partnership and the corporation.
On May 11, 1998, Frantz filed a motion to stay the proceedings, pursuant to R.C. 2711.02 and a provision in the partnership agreement providing for binding arbitration. On May 18, the trial court granted the stay. Hall and Sickafoose allege that they never received notice of the stay. It does not appear that an arbitrator was ever selected. Hall and Sickafoose proceeded to depose Frantz on August 17, 1998. In lieu of the deposition, the parties began negotiating a settlement. When they believed they were coming to a meeting of the minds, the parties videotaped what plaintiffs contend was a settlement agreement.
The videotaped agreement provided for a valuation of SDI, the transfer of the records for Group Four from Wittenauer to another accountant, Mark MacGregor, and the further provision of accounting services for the partnership by MacGregor. The video agreement provided that the valuation of SDI would be accomplished by taking the amount of the bank and brokerage accounts, without any consideration for any alleged advances to or funds due to any party. Once a valuation was established for SDI, the owners would be awarded their share, according to their percentage ownership.[2] Frantz was to continue rendering services to Group Four for a period of three months, with compensation for these services to be paid to SDI.[3] At the end of the videotape, Hall, Sickafoose, and Frantz all stated that they agreed with the settlement proposed on the videotape.
Approximately a week after the videotaped session, plaintiffs' counsel faxed a draft agreement memorializing the videotaped agreement to Frantz' counsel. At approximately the same time, Frantz withdrew $177,000 from SDI accounts. Once plaintiffs discovered this withdrawal, they deposed Frantz on two occasions. In his deposition testimony, Frantz admitted that at the time of the videotaped session, he anticipated that he was going to withdraw the $177,000 from SDI. Frantz claims that he was due this amount in payment of wages for services he rendered to SDI since 1994, which he says were carried on the books of SDI as accrued wages.
On January 15, 1999, Frantz filed a motion with the trial court to refer the proposed videotaped settlement to arbitration. On January 25, 1999, plaintiffs filed a motion to vacate the order of stay pending arbitration, stating that they were never served either with the original motion for the stay or the order granting the stay. Plaintiffs also noted that while the partnership agreement provided for arbitration, SDI and Wittenauer were not bound by the arbitration clause. The plaintiffs asserted that the parties had reached a valid agreement in the videotaped session, and that defendants should be compelled to honor the settlement. Plaintiffs also asked for attorney fees incurred in compelling the settlement.
The trial court held a hearing on the issues, and found thatthere was a valid settlement agreement which Frantz was obliged tohonor. The court also found that Frantz engaged in bad faith, andit awarded attorney fees to plaintiffs. Frantz filed the instantappeal, asserting three errors.
 II. I. WHERE THE COURT, IN ACCORDANCE WITH R.C. § 2711.02
[sic], STAYED PROCEEDINGS PENDING BINDING ARBITRATION PURSUANT TO THE PARTIES' WRITTEN PARTNERSHIP AGREEMENT, THE COURT EXCEEDED ITS JURISDICTION AND ERRED AS A MATTER OF LAW IN ENTERTAINING A MOTION TO COMPEL SETTLEMENT WHILE THE ARBITRATION WAS STILL PENDING.
Frantz asserts that once the trial court granted the stay pending arbitration, the trial court's jurisdiction was limited to confirmation, vacation, modification or correction of the arbitration award, pursuant to R.C. 2711.09. This assertion is without merit.
Hall and Sickafoose claim that they were never advised of the motion for a stay or of the order granting the stay. Although Frantz' motion contained a certificate of service, there is nothing in the record before us to indicate that plaintiffs were served with the trial court's order granting the stay. Assuming, without deciding, that there were no procedural irregularities, the court was within its power to stay the proceedings pending arbitration pursuant to the partnership agreement. However, the party asserting a right to arbitration has the burden of proving the existence of that right. See R.C. 2711.02. It is not clear that Frantz established that because the partners agreed to binding arbitration in their partnership agreement, they thereby waived the right to proceed to court on matters not related to the partnership, simply because the dispute involved other partners.[4] However, since the stay pending arbitration only involved the partners who were also owners of SDI, we will assume, without deciding, that the stay for arbitration was appropriate. Nonetheless, Frantz cannot now assert that the court was without jurisdiction to compel settlement.
In Ohio, arbitration is a preferred form of dispute resolution. See Schaefer v. Allstate Ins. Co., Inc. (1992),63 Ohio St.3d 708, 711-712. "`The general rule is said to be * * * that either party to a contract of arbitration may waive it. * * *'" (Alterations in original.) Mills v. Jaguar-Cleveland Motors, Inc.
(1980), 69 Ohio App.2d 111, 113, quoting La Nacional PlataneraS.C.L. v. North Am. Fruit Steamship Corp. (C.A.5, 1936),84 F.2d 881, 882. Where a defendant does not explicitly waive arbitration, the plaintiff may establish that the defendant has waived arbitration by showing that the defendant knew of the right to arbitration and acted inconsistently with that right. HarscoCorp. v. Crane Carrier Co. (1997), 122 Ohio App.3d 406, 413-414.
In the instant case it is clear that Frantz asserted his right to arbitration, but proceeded to pursue, and enter into, a settlement. Frantz does not dispute that he pursued the settlement agreement. Rather, he claims that the parties did not achieve a settlement, because there was no meeting of the minds. The fact that Frantz was willing to pursue settlement does not constitute a waiver of the right to arbitrate. See, e.g., Loc.R. 10.05(B) of the Court of Common Pleas of Summit County, General Division (permitting settlement negotiation prior to an arbitrator's hearing). Assuming that the parties had reached an impasse in the settlement negotiations, Frantz had the right to reassert his desire to proceed with binding arbitration. However, if the parties reached a valid settlement agreement, that settlement is inconsistent with Frantz' right to arbitrate.
On the videotape, Frantz clearly assented to the settlement as read by counsel for plaintiffs. In his subsequent testimony at depositions and at the court hearing on the settlement, Frantz claimed that he was surrounded by five attorneys and he felt "railroaded" into assenting to the agreement. One of the attorneys present was Frantz' counsel, who had filed the motion for a stay pending arbitration.[5] Frantz did not assert his desire to proceed to arbitration rather than be railroaded into an agreement. Instead, he agreed to the terms recorded on the videotape. Frantz has not asserted that this agreement was "procured by fraud, duress, overreaching or undue influence." SeeWalther v. Walther (1995), 102 Ohio App.3d 378, 383. Consequently, if the video agreement is a valid settlement, it is enforceable and Frantz has waived his right to seek arbitration to resolve the differences he had agreed were resolved. Id.
"The result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof. To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." (Internal citations omitted.) Rulli v. Fan Co.
(1997), 79 Ohio St.3d 374, 376. Consequently, as long as there was a meeting of the minds, the agreement is enforceable. SeeWalther, 102 Ohio App.3d at 383.
If the parties reached a valid settlement, this was inconsistent with Frantz' subsequent assertion of his right to arbitration and the trial court had the jurisdiction to enforce the settlement. We now turn to the substance of the videotape and the draft memorandum to determine if there was a meeting of the minds.
 III. II. WHERE THE DEFENDANT-APPELLANT ORALLY AGREED TO SOME, BUT NOT ALL, OF THE TERMS OF A SETTLEMENT AGREEMENT, AND WHERE PLAINTIFFS-APPELLEES SUBSEQUENTLY PROFFERED A SETTLEMENT DRAFT AGREEMENT WHICH ADDED TERMS MATERIALLY ALTERING THE TERMS TO WHICH APPELLANT HAD ORALLY AGREED, THE COURT ERRED IN GRANTING THE PLAINTIFFS' MOTION TO COMPEL SETTLEMENT.
After a hearing on the settlement, the trial court found that the plaintiffs' written memorandum of the videotape agreement essentially duplicated the videotape.[6]
Frantz asserts that there was no meeting of the minds as to either the videotaped agreement or the subsequent draft memorandum, because the writing contained five materially different provisions.
First, Frantz claims that the draft written agreement allowed the plaintiffs, as minority shareholders in SDI, to prepare a valuation of their stock, something not provided for in the video. We disagree. Both the videotape and the written draft clearly provided for a simple two-step process for the shareholder valuation. First, SDI was to be valued solely with reference to the corporation's bank and brokerage accounts, which are the only assets of the corporation. Second, each shareholder had a certain number of the outstanding shares of SDI, representing a percentage ownership of SDI. Simply applying the percentage ownership to the assets in the SDI bank and brokerage accounts yields the valuation of the SDI stock ownership for each shareholder. As to this issue there is no distinction between the videotape and the draft agreement.
Second, Frantz claims that, although the memorandum agreement provided that neither advances from SDI made on behalf of the shareholders nor capital contributions by Frantz would be considered when valuing SDI, the videotape did not have any such provision. This argument is completely without merit. The videotape agreement provided that Hall and Sickafoose would discuss the settlement with two other minority shareholders, providing them with information about the valuation of SDI. The videotape then provided that even if these minority owners did not agree with the provisions, the agreement between Hall, Sickafoose and Frantz would proceed. On the videotape, one counsel then states:
 [t]he value that they will come up with will not have any, will not be determined with respect to any advances that might have been alleged to have been made. It will be strictly on the value of what those accounts are and taken a percentage of those based on what the percentage of your interest is in the corporation.
 Another counsel interjects, there is a representation that we're relying on for purposes of this settlement that Mr. Frantz has not taken any money out of SDI to pay himself, or any family member, or other associated entity. That there's not been any such withdrawals from SDI.
 This case began in part as a claim by Hall and Sickafoose that Frantz was embezzling funds. Here, the stated intent of the parties was that SDI would be valued solely with reference to the bank and brokerage accounts, on the assumption that no consideration would be given for alleged advances to the shareholders, and on the assumption that Frantz had not depleted SDI resources for his own benefit. This is substantially the same provision as that contained in the draft memorandum. The draft memorandum stated that Frantz was to deliver the brokerage and bank account statements to plaintiffs' counsel, who would prepare a valuation of SDI. Frantz was permitted to state objections to the valuation but the objections "shall not include in any manner any further reduction in valuation of Hall's and/or Sickafoose's stock in SDI for alleged unpaid advances made on their behalf as shareholders in SDI to Group Four or any indebtedness of SDI to Frantz." Both the videotape and the written agreement make clear that SDI's valuation is based strictly on the value of the bank and brokerage accounts. There is no material difference between the two versions of the agreement.
Third, the draft agreement states that Frantz has ten days in which to object to the valuation and his failure to object constitutes acceptance of the valuation. The videotape makes no such provision. Since this provision grants Frantz a further right that he did not have under the videotaped agreement, it is not clear how Frantz is harmed by its inclusion.
Fourth, the draft memorandum provides for further resolution of any dispute in the valuation of SDI in the following manner. If Frantz objected to plaintiffs' valuation and no resolution could be achieved between the parties within seven days of Frantz' objection, then accountant Mark MacGregor would resolve the valuation issue. The videotape made no specific provision for resolution of any dispute about the valuation. Frantz objects to the plaintiffs' CPA being the person empowered to resolve the dispute. However, both agreements make it clear that plaintiffs will value their SDI shares based on the account balances and their percentage shares. Once again, this addition of a dispute resolution mechanism does not materially alter the video agreement, and if anything gives Frantz another opportunity to review the valuation.
Fifth, Frantz asserts that the videotape provided that Frantz would serve as operations manager of the building owned by Group Four for a three-month term, with a three-month renewal term, at the discretion of Hall and Sickafoose. Frantz further asserts that the draft memorandum provides that Frantz will serve for an initial three-month term, but that either Hall or Sickafoose could cause Frantz to be removed within the initial three-month term. While Frantz is correct in summarizing the videotape provision, he is wrong in asserting that the draft memorandum differs from the video. The draft agreement provides that Frantz would serve as operations manager of Group Four for an initial term of three months, with an unspecified number of automatic renewal terms of three months. Either Frantz, Hall, or Sickafoose could terminate the employment agreement only as to a renewal term, and only if that party notified the others before the end of the current term that he intended not to renew. Here again, Frantz complains of a provision that is more generous to him than that included in the videotape, which only allowed for one renewal term.
It is clear that Frantz manifested his intent to be bound by the terms of the video agreement. "[W]hen the parties agree to a settlement offer, this agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement." Kleverv. Stow (1983), 13 Ohio App.3d 1, 4, citing Spercel v. SterlingIndustries, Inc. (1972), 31 Ohio St.2d 36, certiorari denied (1973), 411 U.S. 917, 36 L.Ed.2d 309.
The trial court correctly determined that the provisions of the draft memorandum do not materially differ from the provisions of the videotape agreement to which Frantz assented. Thus, the parties reached a valid agreement. We have already determined that the trial court had proper jurisdiction to enforce a valid settlement agreement, notwithstanding the stay pending arbitration. Therefore the trial court was correct in ordering Frantz to comply with the agreement. Frantz' first and second assignments of error are overruled.
 IV. III. THE COURT ERRED IN AWARDING ATTORNEY FEES AGAINST THE APPELLANT FOR "BAD FAITH" FAILURE TO COMPLY WITH THE TERMS OF THE PURPORTED SETTLEMENT.
Having determined that the trial court appropriately determined that an agreement had been reached on August 17, 1998, we now review the trial court's grant of attorney fees for Frantz' failure to comply with the terms of the settlement.
"Ohio law generally requires explicit statutory authorization or a finding of conduct that amounts to bad faith in order for a prevailing party to recover attorney fees." State ex rel.Pennington v. Gundler (1996), 75 Ohio St.3d 171, 173, citingVance v. Roedersheimer (1992), 64 Ohio St.3d 552, 556 and Stateex rel. Caspar v. Dayton (1990), 53 Ohio St.3d 16, 20. The instant claim is based solely on an allegation of bad faith. A party seeking attorney fees because the opposing party acted in bad faith must be the prevailing party and must prove that the opposing party acted in bad faith. Sorin v. Bd. of Edn. (1976),46 Ohio St.2d 177, 182-183.
A reviewing court will not reverse a trial court's determination on a motion for attorney fees absent an abuse of discretion. See Kemp, Schaeffer and Rowe Co., L.P.A. v. Frecker
(1990), 70 Ohio App.3d 493, 498, citing State ex rel. Fant v.Sykes (1987), 29 Ohio St.3d 65. An abuse of discretion connotes more than mere error of judgment or law, but is found only where the trial court's attitude is unreasonable, arbitrary or unconscionable. Id., citing Beacon Journal Pub. Co. v. Stow
(1986), 25 Ohio St.3d 347.
The essential dispute between the parties at the time of the videotape was whether the valuation of SDI should take into account alleged advances to Hall and Sickafoose by SDI and the alleged accrued wages owed to Frantz. At the trial court hearing, plaintiffs' counsel asked Frantz about the two hours of negotiations that preceded the videotaping. Counsel asked Frantz if "the dispute was your claim that you were entitled to accrued salary and that [Hall and Sickafoose] had to pay back advances[?]" Frantz acknowledged that these were the disputed issues during the negotiations. Then counsel read from Frantz' earlier deposition testimony as to his state of mind at the time of the videotape:
 Question: Tell me what your intentions were at the time that you entered into the settlement agreement.
 Answer: It was in the back of my mind that it was not going to happen.
 Question: That you were not going to value the company without you getting credit for [the accrued wages]?
Answer: That is right.
* * *
 Question: So you felt it was better to tell everybody you agree with everything without you getting credit for that [$177,000] and then wait several days later before taking the money out?
Answer: So.
Question: True, true?
Answer: So, yeah.
Frantz' admission in his deposition testimony is essentially a confession of his own bad faith. Rather than object to the settlement and reassert his right to proceed with arbitration, Frantz announced his intent to be bound by the settlement and then secretly withdrew the funds in violation of that very settlement. It is clear from Frantz' own testimony as to his state of mind before assenting to the video agreement that Frantz did not possess a good faith, albeit mistaken, belief that he was not bound by the videotape agreement. It is the essence of bad faith to manifest intent to be bound by an agreement, meanwhile secretly acting to violate the terms of the agreement.
The trial court acted within its sound discretion in determining that Frantz' failure to comply with the terms of the agreement arose not from an honest belief that he was entitled to so act, but was the product of his dishonesty. The trial court's grant of attorney fees to plaintiffs is affirmed.
 V. Having overruled Frantz' assignments of error, we affirm thejudgment of the trial court.
 Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant. Exceptions.
 ________________________________ WILLIAM R. BAIRD, FOR THE COURT.
SLABY, J. and BATCHELDER, J. CONCUR.
[1] The settlement agreement, enforced by court order, did not resolve the claims against Baker or Wittenauer. However, the trial court's order found that there was no just cause for delay. Civ.R. 54(B).
[2] Although the percentages were not specified in the video, each owner held stock certificates for SDI.
[3] With the sale of the minority ownership of SDI, Frantz would be the sole SDI owner.
[4] Frantz' motion to stay the proceedings stated that the parties signed a partnership agreement containing the arbitration clause. However, Wittenauer was not a partner, and was arguably not bound by the arbitration clause.
[5] It is not clear from the transcript or the videotape who was present beyond the principals, Hall, Frantz, and Sickafoose. Two off-camera voices, one identified as Mr. Marshall, counsel for plaintiff, read the substance of the agreement. Wittenauer's counsel was also present, as was Mr. Baker, appearing pro se. At the trial court hearing, counsel for both parties agreed that Mr. Truby, who represented Frantz, was present at the videotape session.
[6] There were two versions of plaintiffs' draft memorandum. The first draft memorandum assigned to Frantz a slightly larger share, both in terms of shares owned and percentage ownership, than was his due. Plaintiffs' counsel later corrected the figures in the second draft memorandum. The trial court's judgment entry stated that the parties "agreed that the corrected copy was the prevailing memorandum." Frantz does not appeal this particular determination.