WELLS ET AL., APPELLANTS, *v.* AMERICAN ELECTRIC POWER COMPANY ET AL., APPELLEES.

96

(No. 441—Decided
July 29, 1988.)

*Sowash, Manley, Carson &
Shostak, Anne Manley, Jonathan
Sowash* and *Robert Shostak,* for ap-
pellants.

*William E. Olson, Porter, Wright,
Morris & Arthur, D. Michael Miller,
Mark S. Stemm* and *Charles H. Cooper,
Jr.,* for appellees.

GREY, P.J. This is an appeal from a
decision of the Vinton County Court of
Common Pleas granting appellees' mo-
tion for summary judgment. We af-
firm.

The record reveals the following
facts. In 1958 and 1959, appellants or
appellants' predecessors conveyed by
deed to the Ohio Power Company all of
the No. 4A coal beneath their respec-
tive properties. The deeds specifically
gave Ohio Power "the right to mine
and remove the said coal by under-
ground mining processes." The deeds
also contained language waiving "all
damages in any manner arising" from
the mining and removal of the coal.
Ohio Power paid appellants twenty
dollars per acre for the mineral rights.
During that time, twenty dollars per
acre was the reasonable market price
for an entire acre of land with surface
and mineral rights included.

On August 1, 1986, appellants filed
a declaratory judgment action with the
Vinton County Court of Common
Pleas seeking a declaration of their
rights and duties with respect to ap-
pellees under the 1958 and 1959 deeds.
Specifically, the appellants sought to
prevent the appellees from using the
longwall method of coal mining under
their properties.

On October 13, 1987, appellees
filed a motion for summary judgment.
On October 21, 1987, appellants filed a
counter motion for summary judg-
ment. After argument on November 3,
1987, the trial court granted summary
judgment to appellees. Appellants ap-
peal the trial court's decision and
assign two errors. Local Union 1886 of
the United Mine Workers of America
filed an *amicus curiae* brief in the mat-
ter supporting the position of appel-
lees. We will treat appellants' errors
jointly.

FIRST ASSIGNMENT OF ER-
ROR:

"The trial court erred in granting
summary judgment to the coal com-
pany and denying landowners' [*sic*] a
right to trial when genuine issues of
material facts remained before the
court."

SECOND ASSIGNMENT OF ER-
ROR:

"The trial court erred as a matter

of law in granting summary judgment to the coal company."

Appellants challenge the propriety of the trial court's grant of summary judgment to appellees. Civ. R. 56(C) provides in pertinent part:

"* * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

Despite the many issues raised by appellants the sole issue before this court is whether the trial court's construction of the language of the deeds necessitated a ruling of summary judgment in favor of the appellees. We find that the trial court correctly construed those deeds, and summary judgment was proper.

Appellants contend that neither they nor their predecessors contemplated modern longwall mining techniques when they deeded the coal mining rights to Ohio Power. Appellants further contend that the waiver of damages clause did not include damage resulting from the removal of subjacent support regardless of the language in the deed. In support of their contentions, appellants cite cases such as *Burgner* v. *Humphrey* (1884), 41 Ohio St. 340; *Ohio Collieries* v. *Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356; and *Skivolocki* v. *East Ohio Gas Co.* (1974), 38 Ohio St. 2d 244, 67 O.O. 2d 321, 313 N.E. 2d 374. These three cases involved the deeding of mineral rights and the subsequent interpretation of those deeds. Each case reaffirmed the Ohio rule that a coal company is not entitled to remove all coal without leaving subjacent support of the surface. However, each case also turned on an interpretation of the deed involved.

The first paragraph of the syllabus in *Skivolocki, supra,* holds:

"Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language."

From a summary judgment standpoint, the intent of the parties controls. If the contract or the deed shows exactly what the parties intended then there is no question of law or fact. If, however, the language is capable of two reasonable, but conflicting interpretations, then there is an issue of fact on what the parties intended.

The trial court found that the language of the deeds conveying the mineral estate is clear and not susceptible to different interpretations. The court relied on *Burgner* v. *Humphrey, supra,* a leading case and still good authority on the issue of subjacent support. In *Burgner,* the court held, at 352:

"It seems to be well settled, that when one owning the whole fee, grants the minerals, reserving the surface to himself, his grantee will be entitled only to so much of the minerals, as he can get without injury to the superincumbent soil, unless, the language of the instrument clearly imports, that it was the intention of the grantor to part with the right of subjacent support. * * * Each owner must so use his own, as not to injure the property of the other. The subjacent support should be such as will preserve the integrity of the surface * * *."

and at 355:

"Baron Parke, in *Harris* v. *Ryding, supra,* in commenting upon the right of the surface owner, says: 'I do not mean to say that all the coal does not belong to the defendants, but that they cannot get it without leaving sufficient support.' "

and at 353:

"* * * The highest care and skill in the working of the mine, is no defense whatever, if injury results to the surface, from a removal of the subjacent strata."

*Ohio Collieries* v. *Cocke, supra,* follows and cites *Burgner* and holds that the surface owner has an absolute right to subjacent support, and both cases set a strict liability standard for owners of the mineral estate who breach the duty to maintain subjacent support. Under *Burgner* and *Ohio Collieries,* the miner is liable for *any and all* damage resulting from the removal of the subjacent support. *Burgner,* however, also provides, at 353:

"If the grantee or lessee of a mineral estate, desires to be discharged from the servitude of leaving a sufficient support to the superincumbent estate, he should secure such relief by plain and explicit language in the contract, or, the contract should contain something from which the intention to discharge him from his obligation, will appear by necessary intendment. * * *"

In a like manner, *Ohio Collieries* holds, at 253, 140 N.E. at 361:

"* * * We think the rule announced in *Burgner* v. *Humphrey, supra,* must prevail, and the intention of the party to part with the right of subjacent support must be shown by express grant, or be clearly imported in the instrument conveying the estate."

The essence of this case is reduced to a single question: If the owner of the mineral estate is liable to the owner of the surface estate for any and all damage resulting from the removal of subjacent support whether done negligently or not, what is the meaning of the language in the deeds here which says, "* * * the undersigned Grantors hereby waive for themselves, their successors, heirs and assigns all damages in any manner arising from the exercise of the rights hereinbefore granted"?

The answer is clear. If the grantee of the mineral estate is liable for all damages, and if the grantor waives all damages, it cannot be contended that the language of the contract is unclear. "All" means all.

We turn now to a specific discussion of the arguments appellants advance in support of their assignments of error. Appellants argue that the surface owners have an absolute right to subjacent support, and that exculpatory contracts are not favored in the law; both are sound propositions of law. Exculpatory contracts are not prohibited *per se,* but are carefully construed for two valid public policy reasons. One reason is that they are often contracts of adhesion where the parties are not in equal bargaining positions, and the other reason is that if blindly accepted by the courts they would, in effect, constitute a license to be negligent. See the discussion in *Richard A. Berjian, D.O., Inc.* v. *Ohio Bell Tel. Co.* (1978), 54 Ohio St. 2d 147, 8 O.O. 3d 149, 375 N.E. 2d 410. Neither criterion applies in this case. Since the coal company is liable regardless of negligence, there is no inducement to negligence. The parties here were on an equal footing. No landowner was under compulsion to sell his mineral rights, and the inducement to sell was primarily economic, *i.e.,* the price being offered.

Appellants argue that the court construed the language of the deeds to permit appellees to commit an act, negligently or intentionally, with impunity. This argument is without merit. The deed grants only the right to remove coal, and the damages arising from the exercise of that right. Damages otherwise arising are, of course, not waived.

Appellants argue that the longwall mining process could not have been within the contemplation of the parties in 1958 and 1959 when the deeds were executed. But the longwall mining pro-

cess, as such, is only relevant here to the extent that it contributes to subsidence. Implicit in the *Burgner* decision, *supra,* which held that a coal miner is liable for failure to leave a sufficient number of pillars of coal for subjacent support, is the idea that even in 1884 technology was available to remove so much of the coal that subsidence would occur. Various methods of mining are allowed since the deed specifically authorized "underground mining processes" (plural).

Appellants sought in the prayer of their complaint a declaration that "defendants do not have the right to remove coal by the method of longwall mining." Assume, *arguendo,* that appellants were granted such relief and appellees then conducted only room-and-pillar operations. If the pillars left behind were not adequate for support, and subsidence and surface damage occurred, under the *Burgner* and *Ohio Collieries* cases, appellees would be liable for the damages. Under appellants' theory in this case, *i.e.,* that the waiver clause does not waive claims for subsidence damage, appellees would be liable for subsidence resulting from room-and-pillar mining, from augur mining, and indeed from any kind of mining. However, applying the entire language of the conveyance here, one sees that what is granted is the right to run a strictly underground mining operation. Strip mining is prohibited, there is no grant to sink shafts, and the removal and transporting of the coal is to be "underground and under the surface." What damage to the surface might arise from such an operation? The most obvious and most likely damage is subsidence. Indeed, it is difficult to conceive of any kind of damage being done to the surface except through subsidence. We find, as the trial court did, that the language of the deed which waives "all damages in any manner arising" must have been intended by the parties to include the most likely source of damage. This is the only reasonable construction of the language.

We conclude by noting that appellants claim that summary judgment should not have been granted, yet the appellants' complaint was for declaratory relief. They sought a construction of the deeds and an adjudication of the parties' respective rights and duties. This kind of issue is particularly amenable to the summary judgment process.

A reviewing court, upon an appeal from a summary judgment, should look at the record in a light most favorable to the party opposing the motion. *Williams* v. *First United. Church of Christ* (1974), 37 Ohio St. 2d 150, 66 O.O. 2d 311, 309 N.E. 2d 924. In viewing the record below in a light most favorable to appellants we must conclude that the trial court correctly granted summary judgment in favor of the appellees. There was no error. Appellants' first and second assignments of error are without merit and are overruled.

*Judgment affirmed.*

STEPHENSON, J., concurs.

ABELE, J., dissents.