**Ruth EDWARDS, et al., Plaintiffs–
Appellees,**

v.

**HOCKING VALLEY COMMUNITY
HOSPITAL, Defendant–
Appellant.**

No. 02–3362.

United States Court of Appeals,
Sixth Circuit.

Feb. 6, 2004.

Before RYAN and BOGGS, Circuit Judges; and ROSEN, District Judge.*

PER CURIAM.

Hocking Valley Community Hospital (Hocking) is appealing a district court order enforcing a settlement agreement between it and Ruth Edwards arising out of a class-action complaint filed by Mrs. Ed-

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

wards, on behalf of Thomas C. Edwards, her deceased husband, and all others similarly situated, alleging that Hocking and its counsel, Jack McCormick, engaged in debt collection practices in violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692k *et seq.* (FDCPA), the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (ECOA), and the Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01 *et seq.* (Ohio Act). Specifically, Hocking claims that the district court erred in enforcing the settlement agreement and failing to hold an evidentiary hearing, where it alleges there was no evidence in the record confirming the existence of a settlement agreement, and a substantial dispute between the parties as to the terms of the agreement reached. In addition, Hocking contends that if we do find there to be an agreement, the agreement should be reformed in order to resolve inconsistencies that Hocking contends are inherent in the text of the settlement. For the reasons that follow, we affirm the district court's determination to enforce the amended settlement agreement, without reformation.

## I

In October 1998, Jack McCormick, a debt collector and attorney for Hocking, initiated a legal action against Ruth Edwards for medical services and goods supplied to her husband on credit by the hospital. Two months later, a judgment lien was placed on Mrs. Edwards's real property in the amount of $7,058.88, plus interest at 10% a year and the costs of the action. McCormick sent a letter to Mr. and Mrs. Edwards, threatening foreclosure and the sale of their home unless they contacted him to arrange payment. The letter arrived the day before Mr. Edwards passed away and Mrs. Edwards was unable to pay the judgment.

Mrs. Edwards claims that McCormick was not authorized to sue her, or attach her property, for goods and services that were supplied to her husband. On December 13, 1999. Mrs. Edwards joined a class action complaint against McCormick and Hocking in district court. In that complaint, the plaintiff class argued that Hocking discriminated based on marital status and that Hocking knowingly committed unfair, deceptive, and unconscionable acts, based on the impermissible commingling of patient accounts. Mrs. Edwards also argued that McCormick violated the FDCPA and the Ohio Act in connection with the collection of debts by threatening to take action that could not legally be taken, using false representations and deceptive means to collect or attempt to collect a judgment, and illegally taking judgment against Mrs. Edwards for medical goods and services provided to Mr. Edwards.

Mrs. Edwards and Hocking entered into settlement discussions. Judge Marbley denied class certification on September 25, 2000, and two days later issued an order extending the settlement deadline until October 23, 2000. Mrs. Edwards and Hocking managed to come to some agreement and submitted to the court what will be called, for the sake of clarity, the Initial Settlement. However, this agreement was not signed by either party. The Initial Settlement included an Exhibit A, which was a form entitled "Voluntary Request for Combination Patient Accounts and Assumption of Joint Liability for Spousal Accounts." Exhibit A informed spouses as to their rights and also provided space for spouses signing the form to list their individual accounts and to state whether or not they wanted to combine those accounts into a joint account for which they assumed joint liability. In relevant part, the form stated as follows:

We understand that only the spouse named on these individual accounts is now legally responsible to pay those accounts. We understand the Hospital will not and cannot hold one of us liable for the other's accounts unless we allow it to do so. We understand that combining these accounts into a single joint account means that both of us will become legally responsible to pay all those accounts, including after any divorce or separation, death or disability of the other spouse, or any other failure to pay.

Before this Initial Settlement was consummated, however, Hocking's counsel "discovered" an Ohio statute on point, O.R.C. § 3103.03, and caselaw dealing with that statute. *Ohio State University Hospital v. Kinkaid*, 48 Ohio St.3d 78, 549 N.E.2d 517 (1990), which was thought to be generally favorable to Hocking. This law had been in existence throughout the parties' negotiations over the Initial Settlement, but it had not been brought up during the negotiations. O.R.C. § 3103.03, which is entitled "Duty of married person to support self, spouse, and children; duration of duty to support; third person's recovery of support; funeral expenses of spouse," states in relevant part:

A) Each married person must support the person's self and spouse out of the person's property or by the person's labor. If a married person is unable to do so, the spouse of the married person must assist in the support so far as the spouse is able.

. . .

C) If a married person neglects to support the person's spouse in accordance with this section, any other person, in good faith, may supply the spouse with necessaries for the support of the spouse and recover the reasonable value of the necessaries supplied from the married person who neglected to support the spouse unless the spouse abandons that person without cause.

In the *Kinkaid* case, the "support" at issue was a husband's medical bills, incurred before his death. The Ohio Supreme Court held that if a husband is unable to pay for his own necessary medical support, a wife must aid in the support of her husband, to the extent that she is able, pursuant to O.R.C. § 3103.03.

Although Mrs. Edwards's counsel took the position that the ECOA, as recently amended, preempts O.R.C. § 3103.03, the parties nevertheless renegotiated Exhibit A and amended it as follows:

*We understand that the Hospital is required by the federal Equal Credit Opportunity Act to create individual accounts for each spouse unless both spouses consent to a joint account. We further understand that under Ohio law, even if separate accounts are created for each of us, the other spouse may be responsible for payment, to the extent possible, if that spouse has neglected to provide support for necessaries to the spouse whose account has been created. We further understand that if we agree to the combination of our accounts into a single joint account, both of us will become legally responsible to pay all of these accounts, including after any divorce, separation, death, or disability of the other spouse, or any other failure to pay, and regardless of whether there has been a neglect to support under Ohio Revised Code § 3103.03.*

(emphasis added).

On November 15, 2000, Judge Marbley issued a "Stipulation of Substitution of Exhibit A to proposed stipulation of settlement between plaintiffs and defendant Hocking Valley Community Hospital." For the sake of clarity, we will refer to the settlement containing the amended Exhibit A as the Final Settlement. The entire text

of the Final Settlement was not attached to Judge Marbley's order, only the amended Exhibit A. However, the Initial Settlement was clearly referenced in that order.[1] Hocking was represented by Margaret R. Carmany, who had represented Hocking throughout the negotiations, and Mrs. Edwards was represented by Gary M. Smith of the Equal Justice Foundation. Both parties' lawyers signed the stipulation to the amendment, which was accepted by Judge Marbley.[2]

On January 26, 2001. Hocking obtained new counsel and submitted a Notice of Withdrawal of Proposed Stipulation of Settlement or Motion for Reformation of the Proposed Stipulation of Settlement (the Notice of Withdrawal). In the Notice of Withdrawal. Hocking's new counsel argued that although the amendment to Exhibit A was intended to address the existence of O.R.C. § 3103.03 and the *Kinkaid* decision, it did not satisfactorily do so, as it was necessary to change the remaining text of the settlement agreement in order for the amended Exhibit A to make sense. On April 27, 2001, the district court denied Hocking's Notice of Withdrawal, finding that the agreement was not ambiguous and that the defendant did not present any evidence of a mutual mistake having occurred. which might justify reformation of the agreement. On February 20, 2002. Judge Marbley approved the Final Settlement.

## II

### Standard of Review

As a preliminary matter, the parties disagree on the standard of review to be applied by us in this case. Mrs. Edwards argues that we review a district court's decision to enforce an agreement for an abuse of discretion. Hocking argues that while we should review the district court's determinations of law *de novo,* we must uphold its factual findings unless they were clearly erroneous.

In fact, both parties are right to some extent. In *Therma–Scan, Inc., v. Thermoscan, Inc.,* 217 F.3d 414, 419 (6th Cir. 2000), we stated in no uncertain terms that upon review of a settlement agreement, we would affirm any findings of fact made by the district court unless clearly erroneous. In *Therma–Scan* we also addressed the question of whether our standard should be *de novo* or more deferential when reviewing a district court's enforcement of that same settlement, and decided that the appropriate standard for reviewing a district court's decision to grant a motion to enforce a settlement would be an abuse of discretion. *Id.* at 418–19. Nevertheless, the district court will have abused its discretion if it improperly applied the law, used an erroneous legal standard, or committed a clear error of judgment. *Re/Max Int'l, Inc. v. Realty One, Inc.,* 271 F.3d

---

1. Judge Marbley's Order accepting the stipulation substituting Exhibit A into the Initial Settlement states as follows: "The parties hereby stipulate that the Proposed Stipulation of Settlement between Plaintiffs and Defendant Hocking Valley Community Hospital, previously submitted to this Court on October 23, 2000, shall be amended to include the attached Exhibit A in the place of the Exhibit A previously submitted."

2. Hocking contends for the first time in this appeal that there is no evidence proving the existence of the Final Settlement. However, as discussed in Part III.A, the Stipulation of Substitution of Exhibit A to the Proposed Stipulation of Settlement between Plaintiffs and Defendant Hocking Valley Community Hospital, which constitutes the Final Settlement, was "approved by" Hocking's counsel Margaret R. Carmany, as evidenced by her signature, and admitted to by Hocking's new counsel in oral argument before the district judge on March 26, 2001.

633, 645 (6th Cir.2001) (citing *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir.2000)).

## III

In making the decision to enforce a settlement agreement, a district court must conclude that the parties have reached an agreement on all material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir.1988). Where facts material to an agreement are in dispute, an evidentiary hearing is generally compulsory. *Re/Max Int'l.*, 271 F.3d at 646 (citing *Kukla v. Nat'l Distillers Prods., Co.*, 483 F.2d 619, 622 (6th Cir.1973)). However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.1976). Thus, summary enforcement of a settlement agreement, as in this case, is appropriate when there is no substantial dispute regarding the existence of the agreement and the terms are unambiguous. *Kukla*, 483 F.2d at 621; *Aro Corp.*, 531 F.2d at 1372.

### A. Is there a substantial dispute as to the existence of an agreement?

██ Hocking admits in its brief that the Initial Settlement was submitted by both parties to Judge Marbley on October 23, 2000. It asserts, however, that the Initial Settlement "was never filed with the Court and is not, therefore, a part of the record." Appellant's Brief at 4. Hocking further contends that it "never approved" the Final Settlement. *Id.* at 8. Finally, Hocking argues that the district court had "no evidence at all before it in the record upon which to determine the existence of a settlement agreement," and thus an evidentiary hearing was required, in order to determine the existence of an agreement between the parties. *Id.* at 9.

This argument is not persuasive. First, Hocking raises this issue for the first time on appeal and has, therefore, waived its right to argue this point on appeal. *See, e.g., United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 758–59 (6th Cir. 1999). *See also Thurman v. Yellow Freight Sys.*, 97 F.3d 833, 835 (6th Cir. 1996) (holding that claims not raised before the district court must be considered waived). Hocking does not argue against the *existence* of the Final Settlement in either its Notice of Withdrawal, its Memorandum Contra to Plaintiff's Motion to Enforce Settlement with Defendant Hocking Valley Community Hospital, or even in its oral argument before the district court in support of its Notice of Withdrawal. In fact, nowhere in the record on appeal can we find that Hocking asked the district court to rule, as a matter of fact or law, that there was no evidence in the record to support the existence of the Final Settlement. Hocking's arguments were, instead, restricted to arguing that the agreement was internally inconsistent and moreover, did not fairly represent a "meeting of the minds" or comply with Ohio law. Therefore, we see no reason to entertain this new argument on appeal.

Furthermore, the record is replete with evidence of Hocking having approved the Final Settlement. First, Hocking has stated, in documents it filed with the court and in oral argument before the district court, that it submitted the Initial Settlement, although it did not ultimately sign the agreement, and thus there can be no doubt that when it approved the amendment to Exhibit A of the Initial Settlement, it was well aware of what that agreement contained. For example, in its Notice of Withdrawal, Hocking stated that the Initial Settlement "had been jointly presented to the Court by Defendant Hocking's previous counsel and Plaintiff's counsel." In its brief to this court, Hocking stated that

both counsel had "submitted" the Initial Settlement to Judge Marbley. Appellant's Brief at 4. Finally, Hocking's counsel stated in oral argument before the district court that "[o]n October 23 of 2000, a proposed settlement agreement was provided to this court by both of the parties."

Second, there is no question that on November 15, 2000, Hocking's counsel approved, however improvidently, Judge Marbley's Stipulation of the Final Settlement, which substituted the amended Exhibit A into the Initial Settlement, since Hocking's counsel's signature appears below the words "approved by:" on the page following Judge Marbley's order. In fact, at oral argument on this point, the following exchange took place:

> *The Court:* The thing that I was wondering as I reviewed these papers is why should I not give deference to what the parties intended? These were skilled lawyers, they knew what they were doing. I must presume that they understood the law and, you know, there was no mistaken application of the law. They quoted the statute in this subsequent revision. Why should I rescind this contract because you just disagree?
>
> *Hocking's Counsel:* Because both sides, your Honor, both the plaintiffs and the defendants and their counsel, agreed to modify Exhibit A to incorporate the Ohio Revised Code 3103.03 and the *Kinkaid* decision. This was not unilaterally done by the hospital. It was done by joint agreement.
>
> *The Court:* They did that they incorporated it into the November 15 document. So why are we rescinding this subsequent agreement?
>
> *Hocking's Counsel:* Because, to use a mechanical analogy, your Honor, they changed the oil and didn't do the engine tuneup that was required.

> *The Court:* I don't know that your analogy holds up, Mr. Skrobot. Because it's signed by Gary Smith who represents the plaintiffs; but more importantly, it's signed by Margared Carmany who represents [Hocking]. So both parties signed it.
>
> *Hocking's Counsel: That's correct.*

JA at 137 (emphasis added). In sum, there is considerable evidence in the record to support the existence of a settlement agreement, despite Hocking's contentions to the contrary.

### B. Is there a substantial dispute regarding the interpretation of material terms contained in the agreement?

■ Hocking contends that although the parties attempted to modify the Initial Settlement in order to bring it into conformance with Ohio law, specifically O.R.C. § 3103.03 and related caselaw, the parties failed to modify the body of the proposed agreement in order to bring it into line with the new Exhibit A. Hocking argues that Section D of the main text of the agreement, which is the same in the Final Settlement as it was in the Initial Settlement, is irreconcilable with the amendment made to Exhibit A. Section D, entitled "Consideration for Settlement given by Hocking Valley", states in relevant part as follows:

1. In consideration of the agreement made herein by plaintiffs. Hocking Valley consents to entry of a prospective injunction in favor of plaintiffs and the plaintiff class which will prohibit Hocking Valley, its employees, assignees or agents, hereafter from any of the following; subject only to the exception in section (D)(2):

   a. combining credit accounts of different persons;

b. presuming or requiring joint spousal liability for medical care of a spouse;

c. collecting or attempting to collect to individual accounts owed by one spouse from another; and / or

d. instituting any change in credit standards or accounting procedures which would have the effect of evading, avoiding, or undercutting these prohibitions.

2. The prohibitions of section (D)(1) apply in all circumstances save as to existing individual accounts which have been combined into a single joint account through the knowing and voluntary execution of Exhibit A by each spouse.

3. Further, and subject in the future to section (D)(2), Hocking Valley consents to entry of an injunction in favor of plaintiffs and the plaintiff class which prohibits Hocking Valley, its employees, assignees, or agents from taking any collection action of any type against any class member whose membership predates the date on which Hocking Valley fully implements section (D)(1) above, until and unless Hocking Valley reviews each account(s) of such class member and removes therefrom any spousal accounts combined with that individual account(s), if any.

According to Hocking, Section D(1) and (3) are inconsistent with Exhibit A as amended and clearly in violation of O.R.C. § 3103.03, making the reformation of the contract incomplete. Hocking under-stands Exhibit A as advising class members that they can be held liable under O.R.C. § 3103.03 for the debts of their spouse, but views section D of the agreement as prohibiting the hospital from enforcing the collection of such debts. Hocking contends that the result is a contract that is ambiguous and unenforceable.

Mrs. Edwards argues that the intent of the parties is clear from the face of the contract, is not ambiguous, and reflects a compromise position between the parties. Mrs. Edwards brought this law suit claiming that the Federal Equal Credit Opportunity Act, 15 § 1691 *et seq.*, prevents Hocking from collecting a debt from a spouse under federal law when that spouse did not give his or her consent or contract to do so. Hocking, on the other hand, argues that under Ohio law it could in fact collect a debt from a spouse based upon the *Kinkaid* decision and O.R.C. § 3103.03. According to Mrs. Edwards, the parties were able to compromise their positions in the settlement agreement by amending Exhibit A to include language allowing the collection of debts of a spouse only *to the extent possible* under the law.

What is interesting is that both parties agree that the amended settlement was intended to allow Hocking to combine the individual accounts of spouses to the extent permitted under Ohio law and not preempted by federal law, in order to cover medical expenses that are considered necessary for one spouse, but cannot be paid by that spouse.[3] The real disagree-

---

3. Both parties have so stated in their briefs, in combination with their polarized views on the intersection of ORC § 3103.03 and the ECOA. Appellant's Brief states at 21 that "[i]t was unquestionably Defendant's understanding that this modification to Exhibit A would permit Defendant to combine and collect one spouse's account from another spouse in certain circumstances in accordance with the law as provided in ORC § 3103.03 and *Kin-*

*kaid,"* and argue that the ECOA does not preempt the Ohio statute to any degree, so that it is irrelevant. Appellees' Brief states at 15 that "[b]oth parties to the agreement submitted to the district court that they understood that [Hocking] may be able to hold one spouse responsible for the medical debts of the other only inasmuch as it is not preempted by federal law, specifically, the ECOA," and argue that the ECOA preempts the Ohio

ment over terms goes to whether or not it is necessary for each Spouse to sign Exhibit A before Hocking can exercise that right. With regard to the first point, the amendment to Exhibit A, although poorly drafted, can be understood as allowing Hocking to combine the individual accounts of spouses to the extent permissible under applicable state and federal law. With regard to the second point, the district court did not abuse its discretion in holding that the parties unambiguously agreed that Exhibit A must be signed in order for Hocking to combine accounts.

If the parties had intended to allow Hocking to combine the individual accounts of spouses to the extent permissible under applicable state and federal law *without* having to secure a signed Exhibit A, they could have done so very easily. In other words, by adding to Section D(1)(b) a sentence similar to the one added to Exhibit A, the result now sought by Hocking's counsel would have been achieved. Consider, for example, the following text in italics added to the existing text of Section D(1)(b): Hocking will be prohibited from "presuming or requiring joint liability for medical care of a spouse" *except to the extent possible under O.R.C. § 3103.03 and the federal Equal Credit Opportunity Act, if that spouse has neglected to provide support for necessaries to the spouse whose account has been created.* This obvious solution would have allowed Hocking to pursue its rights under O.R.C. § 3103.03 without hindrance. However, the parties instead chose to amend Exhibit A, knowing that Exhibit A was a form that must be voluntarily agreed to. In fact, the first paragraph of Exhibit A states as follows: "Notice: Signing this request must be voluntary. You cannot be asked or required to combine individual patient accounts or assume joint liability for your

spouse's accounts by the Hospital. You may pay off any accounts owed by your spouse without also cosigning for those accounts." Nevertheless, if spouses sign Exhibit A, even if doing so for the purpose of combining their billing without actually joining their accounts. Hocking can combine their accounts and hold either spouse liable, *to the extent possible* under Ohio and federal law, for services provided to the other spouse.

A settlement agreement is a binding contract, and is in this case subject to the contract law of Ohio, since the choice of law provisions of the forum state, Ohio, point to the law of the state in which the contract was formed, which was in fact Ohio. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Wells v. 10–X Mfg. Co.*, 609 F.2d 248, 253 (6th Cir.1979); *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 487 N.E.2d 568, 569 (1986). *See also Marshall v. Beach*, 143 Ohio App.3d 432, 758 N.E.2d 247, 250 (2001) (holding that a settlement agreement in Ohio is considered a binding contract subject to the essential requirements of contract law). According to the Ohio Supreme Court, extrinsic evidence surrounding a contract may only be considered when the language of the contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language of the contract with a special meaning. *Shifrin v. Forest City Enters., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499, 501 (1992). Furthermore, when the terms of a contract are unambiguous, courts must not create a new contract by finding an intent not expressed in the clear language employed by the parties. *Ibid.* Since the terms of the Final Settlement in this case are clear, no extrin-

statute, so that the defendants will not in fact

be able to combine accounts without consent.

sic evidence can be considered and thus an evidentiary hearing is unnecessary.

If one takes Hocking's position that the ECOA does not preempt O.R.C. § 3103.03, then there is no question that Hocking has given up some of its rights under Ohio law with respect to the collection of debts from spouses. After all, since Exhibit A is an entirely voluntary form, married people who refuse to sign it cannot be held liable by Hocking for their spouses' bills, even if those bills were incurred for necessary medical services. And although Hocking claims that the intention of the amendment to Exhibit A was to allow Hocking to collect even without executing Exhibit A, the contract is unambiguous on this point, and it is not for us to create a new settlement based on Hocking's new counsel's current concept of the intent of the parties at the time of the negotiation. It is not necessary that a settlement agreement accurately reflect the state of the law, so long as it is not illegal. Hocking made this concession presumably as part of its consideration for the plaintiffs not pursuing litigation to advance their view of the law.[4] Hocking must now live with the result.

Hocking finally contends that if the Final Settlement is determined by us to be in existence and that there is no substantial dispute over the terms of that agreement, we should reform Section D of the settlement so that it is consistent with Exhibit A. However, we hold that Section D is not in conflict with Exhibit A, if one understands that only when spouses voluntarily sign Exhibit A can Hocking combine those spouses' accounts to the extent permissible under O.R.C. § 3103.03 and the ECOA.

## IV

For the reasons given above, we AFFIRM the district court's judgment in its entirety.

RYAN, Circuit Judge, dissenting.

In my judgment, the district court erred in failing to recognize that there is an ambiguity in the parties' final settlement agreement, which required the district court to hold an evidentiary hearing to determine what the parties intended, so that the terms of *their* agreement, not the *courts'*, might be enforced.

As my colleagues have recognized, the settlement agreement consists of two documents: the Stipulation and Modified Exhibit A.

In Ohio, an "[a]mbiguity exists ... where contract language is susceptible to two or more reasonable interpretations." *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir.1991) (citing *Wells v. Am. Elec. Power Co.*, 48 Ohio App.3d 95, 548 N.E.2d 995 (1988)).

Here, the settlement agreement is indeed "susceptible to two ... reasonable interpretations." *Id.* The Stipulation provides, in relevant part, that Hocking Valley

---

4. Hocking has recently requested this court to grant it leave to submit an affidavit from Hocking's original counsel, establishing that Hocking "believed that the Amended Exhibit A to the Proposed Settlement Agreement would permit it to consolidate accounts as permissible by ORC 3103.03 even if Amended Exhibit A is not signed, while the Proposed Settlement Agreement purports to prohibit Appellant from ever combining accounts unless Exhibit A is signed." This new evidence cannot be considered by us on appeal. It would be more appropriately raised in a motion to the district court for reconsideration under Fed.R.Civ.P. 60, although in order for such a motion to succeed, Hocking would have to demonstrate that it had exercised due diligence to discover this new evidence, despite the difficulty of understanding why this affidavit could not have been obtained before now. Furthermore, we reiterate that the Final Settlement is clear on its face, and such extrinsic evidence is therefore not to be considered under Ohio law.

Community Hospital (Hocking) may not hold spouses jointly liable for charges attributable to one of them, without the written consent of both. Modified Exhibit A, on the other hand, provides, in relevant part, that Hocking may hold spouses jointly liable for some (necessary) medical care charges attributable to one of them, without the written consent of both. Aside from other difficulties, this ambiguity produces a manifestly absurd result, in that, by the terms of the agreement, the hospital may not pursue joint spousal liability without approval, but must notify its patients that it has the right to pursue joint spousal liability without approval. The operative rule of logic here, is that a thing cannot be and not be at the same time. The operative rule of Ohio law is that an ambiguity regarding a material term in a settlement agreement must be resolved, if at all, following an evidentiary hearing. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337, 339 (1997).

The district court held that the obvious conflict between the Stipulation and Modified Exhibit A of the settlement agreement does not render the agreement ambiguous, because the phrase "to the extent possible" in Modified Exhibit A, if construed as meaning "to the extent possible under law," makes Hocking's right to pursue joint spousal liability under Ohio law subject to whatever preemptive effect federal law might have. Quite aside from the illogic of finding the agreement unambiguous because it can be construed into unambiguousness, the district court's holding is completely nonresponsive to Hocking's ambiguity arguments.

The district court's approach to the problem was mistaken from the outset. In finding the contract to be unambiguous based on its *interpretation* of the phrase "to the extent possible" in Modified Exhibit A, the district court departed dra-matically from basic rules of contract law, including the fundamental principle that ambiguity is to be determined by reference to the plain meaning of the terms of the agreement, *see Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411, 413 (1987), and that judicial interpretation of contract terms is permissible only in the presence of ambiguity, *Logsdon v. Fifth Third Bank*, 100 Ohio App.3d 333, 654 N.E.2d 115, 118 (1994).

Because there is an ambiguity in the contract, and maybe more than one, and because the contract is a settlement agreement, the district court should have held an evidentiary hearing, *Rulli*, 683 N.E.2d at 339, rather than an *ad hoc* interpretation of the phrase "to the extent possible." Extrinsic evidence would have been admissible at this hearing to establish the parties' true intent or otherwise demonstrate that a mutual or unilateral mistake occurred in amending the agreement.

Moreover, the court derived its interpretation of "to the extent possible" entirely from plaintiff Ruth Edwards's attorney's assertion, at oral argument, that the parties intended that phrase to mean "to the extent possible under law." Nothing within the four corners of the agreement supports that interpretation, and Edwards did not even proffer that possible interpretation in her written response to Hocking's motion to withdraw the settlement agreement. Moreover, the interpretation is not particularly plausible given the facts of the underlying lawsuit.

According to both parties, the change made to the original Exhibit A was intended to reflect Ohio Rev.Code § 3103.03, as interpreted in *Ohio State University Hospital v. Kinkaid*, 48 Ohio St.3d 78, 549 N.E.2d 517, 519 (1990). Indeed, Modified Exhibit A cites Ohio Rev.Code § 3103.03. That statutory provision states, in part: "If a married person is unable to do so, the

spouse of the married person must assist in the support *so far as the spouse is able.*" Ohio Rev.Code § 3103.03(A) (emphasis added). *Kinkaid,* in turn, explains: "Where a husband is unable to provide for his own support, pursuant to R.C. 3103.03 a wife must aid in the support of her husband *to the extent that she is able.*" 549 N.E.2d at 519 (emphasis added). Given the conceded fact that the parties tried to incorporate these authorities into Modified Exhibit A, it seems likely that they intended "to the extent possible" to mean "to the extent the spouse is able," not "to the extent possible under law." The parties may have intended either of these things, or something else, but this at least highlights one of the flaws in the district court's analysis. Not only did the court determine that no ambiguity existed by relying on an extrinsic submission of one party, it also totally ignored a more plausible, text-based interpretation of the agreement.

But perhaps most strikingly, the court's unauthorized construction of the phrase "to the extent possible" fails to resolve the ambiguity identified by Hocking. It seems apparent that the court misunderstood Hocking's claim of ambiguity. The opinion states several times that the purported inconsistency lies between the "original" agreement and the "amended" agreement. Then, when the opinion attempts to quote the specific text at issue, it reproduces two sentences, both of which appear in Modified Exhibit A. Thus, the opinion suggests that Hocking's claim rests either on an inconsistency between the original and amended agreements or on an inconsistency within the text of Modified Exhibit A itself. Both views are wrong. Hocking is complaining about an internal inconsistency *within* the amended agreement, between the language of the Stipulation and the language of Modified Exhibit A.

Perhaps as a result of this misconception, the court concluded that it could resolve any ambiguity in the agreement by interpreting "to the extent possible" to mean "to the extent possible under [federal] law." This construction simply misses the point!

The question is not whether one can read Modified Exhibit A to be consistent with federal law; rather, the question is whether one can read Modified Exhibit A to be consistent with the text of the Stipulation. One cannot. Therefore, an evidentiary hearing is necessary to determine what the parties intended with respect to Hocking's principal obligation when they amended the settlement agreement by adopting Modified Exhibit A. As written, the agreement does not clearly express the parties' intent regarding Hocking's authority to impose spousal joint liability.

I would reverse and remand for an evidentiary hearing.