Opinion for the court filed by Circuit Judge LINN. Opinion concurring in part and dissenting in part filed by Circuit Judge NEWMAN.
LINN, Circuit Judge.
This case involves a dispute over ownership of a United States Patent. Euclid Chemical Company (“Euclid”) brought a declaratory judgment action concerning patents purportedly owned by Vector Corrosion Technologies, Inc. (“Vector”). Euclid Chem. Co. v. Vector Corrosion Techs., Inc., No. 1:05-CV-080, 2007 WL 4460628 (N.D.Ohio Dec. 14, 2007), slip op. at 1. Vector counterclaimed for infringement and moved for partial summary judgment that it owned by assignment one of the patents-in-suit — U.S. Patent No. 6,217,742 (the “'742 patent”) — based on a December 20, 2001 agreement (the “Assignment”). Id. at 2. The district court concluded that the Assignment unambiguously transferred the '742 patent to Vector, and it therefore granted Vector’s motion. Id. at 6. The district court also held that the parties had either settled or abandoned all remaining claims, including Euclid’s claim that it was a bona fide purchaser for value of the '742 patent. Id. at 8. Euclid appeals both aspects of the district court’s judgment.
We conclude that the Assignment was ambiguous, and that the district court therefore erred by granting Vector’s motion for partial summary judgment without considering extrinsic evidence of the parties’ intent. Likewise, we conclude that the district court abused its discretion by dismissing Euclid’s bona fide purchaser claim on the ground that Euclid had abandoned it. We therefore vacate and remand.
I. BACKGROUND
Euclid’s declaratory judgment action originally concerned six patents. In the first five counts of its complaint, Euclid alleged that it was entitled to a declaratory judgment of noninfringement and/or invalidity with respect to five patents, each of which Euclid alleged was exclusively licensed to Vector. See Complaint ¶¶ 18-42, Doc. No. 1-1, Euclid Chem. Co. v. Vector Corrosion Techs., Inc., No. 1:05-CV-080, 2007 WL 4460628 (N.D.Ohio Jan. 14, 2005) (“Complaint ”). Each of these five counts was resolved prior to appeal as the result of various judgments and settlements. Euclid, slip op. at 1.
Euclid’s two remaining counts are at issue in this appeal. In Count VI, Euclid sought declaratory judgment that the Assignment did not transfer the '742 patent *1342 to Vector. Complaint ¶¶ 43-53. In Count VII, Euclid sought a further declaratory judgment that it was a bona fide purchaser for value of the '742 patent. Id. ¶¶ 54-58.
Vector moved for partial summary judgment, arguing that it was the rightful owner of the '742 patent, by virtue of the Assignment. Euclid, slip op. at 2. The Assignment is a one-page document, dated December 20, 2001, and signed by Jack Bennett (“Bennett”). Bennett is the sole named inventor of the '742 patent. See '742 patent at [76]. In full, the Assignment provides:
I,JACK BENNETT, whose full post office address is 10039 Hawthorne Drive, Chardon, Ohio 44024, in consideration for $25,000.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged do hereby sell and assign to VECTOR CORROSION TECHNOLOGIES LTD. whose full post office address is 474 Dovercourt Drive, Winnipeg, Manitoba Canada R3Y 1G4, all my interest in the United States, Canada and in all other countries in and to my US, Canadian, and European applications for patents and issued U.S. patent, namely:
1. Issued U.S. Patent 6,033,553. This patent claims the specific use of LiN03 and LiBr to enhance the performance of metallized zinc anodes;
2. US Application No. 08/839,292 filed on April 17,1997,
3. US Application No. 08/731,248, filed on October 11, 1996 (now abandoned),
4. EPO Application No. 99122342.1, filed November 9,1999, and
5. Canadian Application No. 2288630, filed November 8,1999,
any and all divisional applications, continuations, and continuations in part together with the entire right, title and interest in and to said applications, any and to all divisional applications, continuations, and continuations in part thereof, the right to claim priority therefrom under the International Convention, and any and all Letters Patent which may issue or be reissued for said invention to the full end of the term for which each said Letters Patent may by granted; and hereby authorize the issuance to said assignee of any and all said Letters Patent not already issued as the assign-ee of entire right, title and interest in and to the same, for the sole use and benefit of said assignee, its successors, assigns or legal representatives; and hereby covenant and agree to do all such lawful acts and things and to execute without further consideration such further lawful assignments, documents, assurances, applications, and other instruments as may reasonably be required by said assignee, its successors, assigns or legal representatives, to obtain any and all Letters Patent for said invention and vest the same in said assignee, its successors, assignees or legal representatives.
SIGNED AT: Chardon, Ohio, U.S.A.
This 20th day of December, 2001
The '742 patent is a “[c]ontinuation-in-part of application No. 09/236,731, filed on Jan. 25, 1999, now Pat. No. 6,033,553 '742 patent at [63]. However, the '742 patent issued on April 17, 2001 — before the date of the December 20, 2001 assignment. Id. at [45].
The district court granted Vector’s motion for partial summary judgment. Applying Ohio law, the district court reasoned that the Assignment was unambiguous, that the '742 patent was a continuation-in-part of U.S. Patent 6,033,553 (the “'553 patent”), and that “the plain and unambiguous language of the [Assignment] assigns all rights in the 553 patent and any and all continuations-in- *1343 part thereof.” Euclid, slip op. at 6. Because the district court held that the Assignment was unambiguous, it concluded that it could not consider extrinsic evidence to interpret it. Id.
Addressing Count VII of Euclid’s complaint, the district court noted that Euclid did not move for summary judgment on its bona fide purchaser claim, and instead only made arguments concerning its status as a bona fide purchaser in a footnote in its brief in opposition to Vector’s motion for partial summary judgment on ownership. Id. at 8. Because of this, the district court found that Euclid had “abandoned Count VII of its Complaint.” Id. The district court concluded that no remaining claims were pending before the court, and it entered final judgment. Id. at 9.
Euclid timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
II. DISCUSSION
A. Assignment of the '742 Patent
The district court held that the Assignment unambiguously transferred ownership of all continuations-in-part of the '553 patent to Vector, including the '742 patent, even though the '742 patent had already issued. Specifically, the district court relied on the language of the Assignment assigning “Issued U.S. Patent 6,033,553” along with “any and all ... continuations in part together with the entire right, title and interest in and to said applications, any and to all divisional applications, continuations, and continuations in part thereof ... and any and all Letters Patent which may issue or be reissued for said invention_” Euclid, slip op. at 6. According to the district court, the “said invention” referred to in the Assignment is the invention of the '553 patent, and the '742 patent is unambiguously a continuation-in-part of that patent. Id. Euclid argues on appeal that the contract is, at best, ambiguous as to whether already issued patents are encompassed in the assignment.
“This court reviews a district court’s grant of summary judgment de novo.” Israel Bio-Engineering Project v. Amgen, Inc., 475 F.3d 1256, 1263 (Fed.Cir.2007). “Construction of patent assignment agreements is a matter of state contract law.” Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1370 (Fed.Cir.2008). Under Ohio law:
When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. We examine the [contract] as a whole and presume that the intent of the parties is reflected in the language used in the [contract]. We look to the plain and ordinary meaning of the language used in the [contract] unless another meaning is clearly apparent from the contents of the [contract]. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.
On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties’ intent....
Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 797 N.E.2d 1256, 1261 (2003) (citations omitted and emphases added). Put another way, “[a]mbiguity exists only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations.” Potti v. Duramed Pharms., Inc., 938 F.2d 641, 647 (6th Cir.1991) (citing Wells v. Am. Elec. Power Co., 48 Ohio App.3d 95, 548 N.E.2d 995 (1988)).
We disagree with the district court that the Assignment unambiguously trans *1344 ferred ownership of the '742 patent to Vector. The district court was correct that the language of the Assignment purports to convey “US Patent 6,033,553” and “any and all divisional applications, continuations, and continuations in part.” Euclid, slip op. at 4. The district court was also correct that the '742 patent is a eon-tinuation-in-part of the '553 patent, as the Related U.S. Application Data on the face of the '742 patent makes clear. Id. at 6; see also '742 patent at [63].
The Assignment, however, also includes language that suggests that it was not intended to effect an assignment of the '742 patent. In particular, the Assignment specifically assigns all interest in and to the inventor’s “US, Canadian, and European applications for patents and issued U.S. patent.” Notably, this language refers to “applications” — plural—-but “issued U.S. patent” — singular. Had the assignee intended, through the assignment of “continuations in part” to assign other issued U.S. patents, it would be expected that the Assignment would have said that the inventor was assigning his “issued U.S. patents”— plural — and even recited the patent number of the issued '742 patent.
At bottom, we cannot give the Assignment a “definite legal meaning.” Westfield, 797 N.E.2d at 1261. Under one ■reasonable interpretation, the Assignment includes the '742 patent, because it issued from a continuation-in-part of the '553 patent. But under another reasonable interpretation, the Assignment excludes the '742 patent, because it was an already issued patent, not an application, at the time of the assignment. We therefore conclude that the Assignment is susceptible to at least two reasonable interpretations and is therefore ambiguous under Ohio law. See Potki, 938 F.2d at 647. Extrinsic evidence therefore should have been considered to ascertain the parties’ intent. See Westfield, 797 N.E.2d at 1261.
In its brief on appeal, Euclid argues that substantial extrinsic evidence supports its view that the Assignment did not include the '742 patent. Specifically, Euclid points to evidence concerning Vector’s recording of the assignment of the '553 patent but not the '742 patent, the inventor’s payment of maintenance fees and attempted licensing negotiations after the date of the Assignment, and the subsequent execution of a different assignment by the inventor. Vector, however, has not yet had the opportunity or the obligation to challenge Euclid’s extrinsic evidence or to bring forward its own evidence of intent. We therefore remand to the district court to allow that court to determine in the first instance — either through a subsequent motion for summary judgment, or at trial— whether the Assignment, interpreted in light of relevant extrinsic evidence, transferred ownership of the '742 patent to Vector.
B. Euclid’s Bona Fide Purchaser Claim
The district court found that Euclid had abandoned Count VII of its complaint, which alleged that Euclid was a bona fide purchaser for value of the '742 patent. Euclid, slip op. at 8. In making this finding, the district court noted that Euclid did not move for summary judgment on its bona fide purchaser claim, and that the only arguments that it had presented to support that claim were made in an “educational footnote” in its brief in opposition to Vector’s motion for summary judgment on the issue of ownership based on the Assignment. Id. In its briefing on appeal, Vector argues that the district court’s finding was proper, because Vector had moved for summary judgment on the issue of ownership under the Assignment, and Euclid failed to meet its burden under Federal Rule of Civil Procedure 56(e)(2) to “set out specific facts showing a genuine issue for trial.” In essence, Vector treats the *1345 district court’s finding of abandonment as a grant of summary judgment in Vector’s favor. Euclid responds that Vector never moved for summary judgment on Euclid’s bona fide purchaser claim, and that Euclid was therefore under no obligation to come forward with evidence until trial. Euclid therefore characterizes the district court’s action not as a grant of summary judgment, but rather as a dismissal of its claim for failure to prosecute.
We agree with Euclid that the district court’s finding that it had abandoned its bona fide purchaser claim was effectively a dismissal for failure to prosecute, rather than a grant of summary judgment. Euclid’s complaint presented two separate counts related to the '742 patent: Count VI sought a declaratory judgment that the Assignment did not transfer any rights in the '742 patent to Vector, while Count VII sought a declaratory judgment that Euclid was a bona fide purchaser for value of the '742 patent. Vector moved for partial summary judgment on its claim of title pursuant to the Assignment, but it has identified no part of its motion for partial summary judgment that makes any mention of Euclid’s bona fide purchaser for value claim. A party’s obligation to “set out specific facts showing a genuine issue for trial” is triggered only when “a motion for summary judgment is properly made and supported.” Fed.R.Civ.P. 56(e)(2). Here, Vector did not move for summary judgment on Euclid’s bona fide purchaser claim, and the district court therefore could not properly have entered summary judgment against Euclid under Rule 56(e)(2).
We therefore construe the district court’s judgment that Euclid abandoned its bona fide purchaser claim as a dismissal for failure to prosecute. Pursuant to Federal Rule of Civil Procedure 41(b), “[i]f the plaintiff fails to prosecute ... a defendant may move to dismiss the action or any claim against it.” Regional circuit law governs our standard of review of dismissals for failure to prosecute, Mitutoyo Corp. v. Cent. Purchasing, LLC, 499 F.3d 1284, 1290 (Fed.Cir.2007), and the Sixth Circuit reviews such dismissals for abuse of discretion, Wu v. T.W. Wang, Inc., 420 F.3d 641, 643 (6th Cir.2005).
In this case, the district court relied on two facts to conclude that Euclid had abandoned its bona fide purchaser claim: (1) Euclid “did not move for summary judgment on this claim”; and (2) Euclid’s “arguments on [its] status as a [bona fide purchaser] were limited to a footnote in its Brief in Opposition to Defendants’ Motion for Partial Summary Judgment and in its list of extrinsic evidence it asked the Court to consider when determining ownership of the 742 patent.” Euclid, slip op. at 8. Neither of these facts support the district court’s conclusion that Euclid abandoned its bona fide purchaser claim. As to Euclid’s failure to move for summary judgment, it is clear that the failure to move for summary judgment on a claim does not indicate an intent to abandon that claim. See, e.g., Mitutoyo, 499 F.3d at 1290-91 (holding that district court “abused its discretion by dismissing [a] claim for failure to prosecute under Rule 41(b)” when the court “relied heavily on the fact that [the plaintiff] did not move for summary judgment,” because “failure to so move likely indicates [the plaintiffs] sense that issues of material fact exist, not an intent to abandon its ... claim.”). Likewise, Euclid’s failure to address its bona fide purchaser argument in detail in its opposition to Vector’s motion for summary judgment cannot support dismissal for failure to prosecute. As discussed above, Euclid was not obligated to come forward with any argument concerning its bona fide purchaser claim when Vector did not move for summary judgment on that *1346 claim. Moreover, Euclid asserted its bona fide purchaser argument — albeit in what the district court characterized as an “educational footnote” — in response to Vector’s separate summary judgment motion on the issue of ownership under the Assignment. Euclid, slip op. at 8. In these circumstances, we conclude that the district court abused its discretion by dismissing Euclid’s bona fide purchaser claim.
III. CONCLUSION
For the foregoing reasons, we conclude that the Assignment was ambiguous and that the district court should have considered extrinsic evidence to determine whether the Assignment transferred ownership of the '742 patent. We further conclude that the district court abused its discretion by dismissing Euclid’s bona fide purchaser claim. We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

COSTS
Each party shall bear its own costs.